## NEIS VS. FRANZEN.

18 537
94 454

Where, in an action for a trespass to the close in removing a fence and cutting down trees, the answer alleged that the land was a highway, and that the defendant, at the time when &c., was a supervisor of the town in which the same was situate, and that he therefore "in his own right did the acts complained of, as he lawfully might," and at the trial the evidence introduced by the defendant was all obviously directed to making out a defense on the ground that he committed the acts complained of while acting as such supervisor in laying out and opening the highway, and no objection was taken that the evidence was inadmissible under the answer: *Held*, that even if the answer failed to state that defense with sufficient distinctness, the objection could not be taken for the first time in this court.

The supervisors of a town, in altering a highway upon the application of freeholders, are not confined to the exact line named in the application, but should exercise a reasonable discretion on that subject, and if satisfied that the public interests require a variation from the proposed line, they should make it.

An application of freeholders requested the town supervisors to alter a road which ran directly between two specified points on the line between towns 16 and 17, so as to avoid certain "swampy land, and to lay such highway either northward or southward, through town 17 or 16, at the discretion of the supervisors, on dry and good land." *Held*, that the application was sufficiently definite to enable the supervisors to act upon it.

The supervisors ran the road as altered from one of the points mentioned in the application in a southwesterly direction, so that the terminus of the newly surveyed part was in the middle of a highway already existing, which ran thence north till it intersected said town line line road at the other point mentioned in the application. *Held*, that the action of the supervisors was not invalid on the ground that it did not conform to the application.

The power given (by sec. 67, ch. 19. R. S.) to the supervisors of two adjoining towns to lay out a town line road, includes the power of altering such road upon application duly made to them for that purpose.

Where a section of the road as so altered lies wholly within one of the towns, the supervisors may still determine what part of that section shall be kept in repair by each town, and what part of the damages shall be paid by each. R. S., ch. 19, sec. 68.

A joint order of the supervisors of two adjoining towns, altering a town line road, which states that application for that purpose was made by six freeholders of each town, is *prima facie* evidence that such applications were regularly made. R. S., ch. 19, sec. 59.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action for trespass in breaking the plaintiff's close, in the town of Marshfield in said county, throwing down his fence, and cutting his trees. Answer, that the premises were a public

highway, and the defendant, at the time when &c., was one of the board of supervisors of the town of Calumet, in which (the answer alleges) said lands are situate; and that therefore " the defendant in his own right did all and singular the acts com-plained of, as he lawfully might." At the trial, the plaintiff proved that the acts complained of were done by the defend-ant's direction upon his lands, which were the west half of the northwest quarter of section 2 in the town of Marshfield. On cross-examination, one of his witnesses testified that the de-fendant was a supervisor of the town of Calumet at the time of the alleged trespass. The defendant then offered in evidence the following papers: an application to the supervisors of the town of Marshfield, signed by seven persons who describe themselves therein as freeholders and residents of said town, " to alter a certain piece of highway which is laid on the town line between said towns" of Calumet and Marshfield, " beginning at the southwest corner of sec. 35, T. 17 [Calumet,] and on the northwest corner of sec. 2, T. 16 [Marshfield,] and running due east to the quarter lines of said sections; said alterations to be made by the supervisors between these two points to avoid that swampy land, and lay said highway either northward or southward, that is, either through town 17 or town 16, at the discretion of the supervisors, on dry and good land." 2. A notice signed by the supervisors of the town of Marshfield, and dated November 25th, 1861, which recites that an appli-cation had been made to them " on the 25th of November, 1861, by six freeholders of said town, for a highway to be al-tered as follows: The highway in contemplation being a town line road between the towns of Calumet and Marshfield, and beginning on said town line between said towns at the south-west corner of sec. 35, T. 17, and the northwest corner of sec. 2, T. 16, and running thence eastward, either northerly or southerly from said town line, until it again intersects said town line road at the quarter stake half a mile distant from the place of beginning, on good dry ground, at the discretion of said

supervisors." The notice then states that said supervisors will meet at a place and hour specified, in the town of Calumet, on the 5th of December, 1861, to decide upon such application. 3. An order signed by the supervisors of the towns of Calumet and Marshfield respectively, and dated December 7th, 1861, which recites that, "upon the application of six freeholders residing in the town of Calumet, and upon the application of six freeholders residing in the town of Marshfield, for the alteration of a highway on the town line between said towns," they met at the time and place specified in the aforesaid notice, and personally examined such highway, and heard such reasons as were offered for and against altering the same, and determined to alter it as thereinafter described, "having, as required by law, first made out a notice, and fixed therein a time and place at which we [they] would meet and decide upon such application, and the applicants for altering such highway having five days previous to our [their] said meeting, caused such notice to be duly given to all the occupants of the lands through which said highway passes, and such notice having also been posted up in three public places in said town ten days before the time of our [their] said meeting." The order then states that an accurate survey has been made of the line as altered, which it describes as follows: "commencing at the quarter stake between sec. 35 in the town of Calumet and sec. 2 in the town of Marshfield, instead of running along the town line between said towns, west one half mile, it, as now altered, runs south 44 degrees 30 minutes west, five chains, thence south 49 degrees 15 minutes west, eleven chains, thence south 77 degrees 15 minutes west, twenty-five chains, to the center of a highway which runs north and south; the line of said survey is to be the center of said highway, and the same is established four rods in width." 4. A like order filed in the clerk's office of the town of Calumet. 5. An order signed by the supervisors of the two towns, dated December 7th, 1861, which, after reciting the making of the above order, states the

amounts assessed by said supervisors to be paid to *John Neis* as owner of the premises described in the complaint in this action, and to another person as owner of the east half of the same quarter section, for damages sustained by them from the laying out of said road. The order states that the portion of said road running through the plaintiff's land was, " by agreement, to be worked by the town of Calumet, and likewise the damages to be paid by said town of Calumet." The plaintiff objected to all the papers so offered, and to each of them separately, because they " did not show that they were in conformity with the specific directions of the statute." He objected also to the petition, that it was " not sufficient ;" to the notices, that they did not " conform to the application signed by the freeholders." He further objected " that the papers were not properly certified ; that the alteration did not correspond with the application therefor; and that the proceedings were irregular ;" but the objections were overruled, and the evidence admitted. The defendant, as a witness in his own behalf, testified that he was a supervisor of the town of Calumet, in 1861 and 1862, and helped lay out the road on plaintiff's land, and that the acts complained of were performed by him while so engaged. He also introduced oral testimony (which was received against the defendant's objection), to show that there was a road on the west side of plaintiff's land running north to the town line, which had been used and worked as a public highway for thirteen or fourteen years. The court found as facts, that " the defendant was, at the time of the commission of the trespass charged against him, a supervisor of the town in which said premises were situated ;" that the premises were at the time a public highway, and the defendant was not entitled to the possession thereof; and that the defendant, as such supervisor, entered upon the same, as he lawfully might do, to open said highway. Judgment for the defendant; from which the plaintiff appealed.

*Gillett & Conklin*, for appellant :

1.   The answer does not allege that the acts complained of were committed by and under the authority of the defendant as one of the supervisors of the town of Calumet.   The defense is that the premises were a public highway, and therefore the defendant "in his own right" did the acts complained of..   2.   The petition of the freeholders read in evidence is too indefinite ; it asks for no specific route.   The notice of the supervisors of the hearing of said application was especially defective in not specifying the several tracts of land through which the altered road should pass.   R. S. ch. 19, sec. 56.   3. No petition from the freeholders of the town of Calumet was given in evidence ; and the recital contained in the joint order is no proof that there was such a petition.   *Williams v. Holmes* 2 Wis., 129.   4.   There is no proof that the petitioners were freeholders, which the party who sets up the proceedings is bound to show affirmatively.   *Williams v. Holmes, supra.*   Nor is there any proof of the posting of notices.   5.   The alteration made varies materially from that applied for.   6.   The order assessing damages provides that the plaintiff, whose land is in the town of Marshfield, shall be paid by the town of Calumet.   The damages should have been assessed against the town in which plaintiff resided.   Sec. 61, ch. 19, R. S.   If the order is void in that respect, then there has been no compensation provided for the plaintiff ; and the case falls within the doctrine of *Norton v. Park*, 3 Wis., 714.   7.   The statute makes no provision for the alteration of a town line road.

*Flint & Coleman*, for respondent, to the point that the supervisors were not bound to follow the line specified in the application, but might exercise a reasonable discretion, cited R. S., ch. 19, secs. 57, 58, 67-69 ; *Halleck v. Woolsey*, 23 Wend., 327 ; *Kean v. Stetson*, 5 Pick., 492 ; *Merrill v. Inhabitants of Berkshire*, 11 id., 269.

*By the Court*, COLE, J.   The whole case abundantly shows that the defendant rested his entire defense upon the ground

that he did the acts complained of while acting as a supervisor in laying out or opening a highway. All his testimony was obviously directed to make out a justification upon that ground, and no objection was taken that the evidence was not admissible under the answer. If, therefore, we were to assume that the answer was technically defective because it did not distinctly allege that the trespasses complained of were committed by the defendant by virtue of his authority as one of the supervisors of the town of Calumet in opening a public highway, still the objection to it ought not to prevail at this stage of the cause, when not taken in the court below. It was not possible that the plaintiff could be misled as to the nature of the defense disclosed in the answer. The defendant does not attempt to justify his acts upon the ground that as an individual he has a right to cut down trees standing in the highway which passes over the land of another. He rests his defense solely upon the fact that he was a public officer, and, in the discharge of his legal duties as such, might do what he did.

Again, it is claimed that the court erred in admitting the application of the freeholders for the alteration of the highway, because such application asked for no specific route, and therefore it is argued that it was too indefinite to even give the supervisors jurisdiction of the proceeding. The application was to alter a certain piece of highway which is laid on the town line between said towns, beginning at the S. W. corner of section 35, T. 17, R. 19, and on the N. W. corner of section 2, T. 16, R. 19, and running due east to the quarter line of said section, said alterations to be made by the supervisors between these two points to avoid that swampy land, and lay the said highway either northward or southward, that is either through T. 17 or T. 16, at the discretion of the supervisors, on dry and good land." We are of the opinion that this application designates with sufficient certainty the alteration asked for in the highway. The road had already been laid out on the town line, and the petitioners ask that it be changed between two

points so as to avoid a swamp. The general course of the proposed alteration is stated, and no person could have any difficulty in ascertaining what was desired. It is true, the supervisors were asked to change the road northward or southward from the town line between the termini so as to avoid a natural obstacle, but this was nothing more than asking the supervisors to exercise a discretion over the matter which the law gave them. For we do not suppose that the supervisors, in altering a public highway, are necessarily confined to the particular line named in the application, and must adhere to that precise route or refuse to change the road. They should exercise a reasonable discretion upon the subject, and if satisfied that the public interests require a variation from the proposed line, they should make it. Of course they should adopt the proposed route as far as practicable. But to say that the supervisors can only adopt the definite line of road suggested in the application, without any variation whatever, is unnecessarily restricting their action, and is depriving them of that discretion in the matter which the law has entrusted to them.

Another objection taken by the appellant is, that it does not appear from the case that any application for a change of the road was made by the freeholders of the town of Calumet to the supervisors of that town. It is said that to authorize the joint action of the supervisors of the two towns, there should be a petition from the freeholders of each town. No question was made on the trial that the freeholders of the town of Calumet had not made such an application, while the joint order changing the highway states that application was made by six freeholders residing in each town. Our statute expressly makes such an order competent evidence of the facts therein contained, and *prima facie* evidence of the regularity of all the proceedings prior to the making of such order. Section 59, chap. 19, R. S. 1858. In view of this statute we must hold that this objection is not well taken. It is proper further to remark that no such provision of law existed in the statutes of 1849, and

hence, much of the reasoning of the court in *Williams v. Holmes*, 2 Wis., 129, is inapplicable to the case before us. This observation likewise disposes of the fourth point made on the brief of the counsel for the appellant.

Further, it is insisted that the alteration in the highway did not correspond with the application therefor. It appears that the supervisors, instead of changing the road so as to make it run on a line direct from one terminus to another, ran it on a line direct to a highway intersecting such highway a short distance from one terminus, and thence along that highway to the point of termination. We have already stated that we did not consider that the supervisors were limited to the precise route specified in the application, but might depart from it, if, in their judgment, the public interest would be thereby promoted. The statute requires them to " decide upon the application as they shall deem proper" (section 57), thus conferring upon them some power and discretion in regard to selecting the best route. Section 67 also provides that whenever it shall be deemed necessary to lay out a highway upon the line between two towns, such highway shall be laid by the supervisors of each of said towns, either upon said line or as near thereto as the situation of the ground will admit; and they may vary the same either to the one side or the other of such line as they may deem necessary. These and other provisions in the chapter clearly show that it was the intention to give the supervisors some discretion in the matter, and that they are not required to adopt any proposed alteration fully, but may depart from it when they think the public good demands the change.

The next point made upon the brief of the counsel for the appellant is sufficiently answered by a reference to section 68. It will be seen that this section fully authorizes the supervisors, upon laying out a highway upon the line between two towns, to determine what part of such highway shall be made and kept in repair by each town, and what share of the dam-

ages shall be paid by each. And we have no doubt that the supervisors are equally authorized to apportion the work and damages where they alter a road laid out on a town line, as where they open it in the first instance. But it is said that the statute makes no provision for the alteration of a town line road. It will be seen, however, from section 67 already quoted, that the amplest authority is given the supervisors of adjoining towns to lay out a highway upon a town line; and this greater power to lay out, includes the lesser one of altering such highway upon application made to them for that purpose.

This disposes of all the material points in this case made by the appellant.

The judgment of the circuit court must be affirmed.