JACKSON, Appellant, vs. RANKIN, Respondent.

*November 5 — November 23, 1886.*

| 67 | 285 |
| 78 | 285 |
| 67 | 285 |
| 112 | 4244 |

HIGHWAYS. *(1)* " *East quarter section line.*" *(2, 3) Description of proposed highway in petition and notice. (4) Posting and service of notice: Presumption. (5) Entry upon improved land to obtain materials.*

1. The term " east quarter section line" of a section, used in the petition and order for laying out a highway, is construed to mean a north and south line drawn through the center of the east half of the section.
2. Where in the petition the description of the proposed line of the highway is such that it may be located readily and with certainty, it is sufficient and will not be vitiated by an inaccurate use of technical terms.
3. Though the notice of the meeting of the supervisors to act upon the petition does not specify the tracts of land through which the highway may pass by an enumeration of the government subdivisions, yet it is sufficient if the description of the line of the highway is such that the tracts affected can be ascertained without difficulty.
4. The fact that the supervisors considered and passed upon, on its merits, a petition for the laying out of a highway, is sufficient to sustain a finding that the notices of their meeting were duly given.
5. The overseer of highways has no right to enter upon *improved* land outside of the limits of a highway in order to obtain material with which to make or improve the highway, even though it cannot otherwise be fitted for travel without great expense and trouble.

APPEAL from the Circuit Court for *La Fayette* County.

The action is trespass.   The complaint charges that the defendant broke and entered the plaintiff's close, tore down his fences, and did other injuries to his freehold, to his damage, etc.   The defendant answered that the *locus in quo* was a public highway, legally laid out and established; that the plaintiff or his grantor had neglected and refused to open the same after having been required to do so by competent authority; that the defendant was overseer of the road district in which such premises were situated, and was ordered by the supervisors of his town to open such highway to public travel; and that he did the acts complained of in opening the highway and within the limits thereof, doing no unnecessary damage.

The cause was tried by the court without a jury, and resulted in a judgment for the defendant, from which the plaintiff appeals to this court.

For the appellant there was a brief by *M. M. Cothren* and *H. S. Magoon,* and oral argument by *Mr. Cothren.*   They contended, *inter alia,* that there was a lack of proof of posting notices as required by sec. 1267, R. S., and that the notices should have designated the several tracts of land through which the road might pass by the government subdivisions.

For the respondent there was a brief by *Orton & Osborn,* and oral argument by *Mr. Osborn.*

LYON, J.   The main question litigated on the trial was whether the alleged highway was legally laid and established.   The court found that it was.   If that finding is correct, we are satisfied by the evidence that the defendant was justified in doing the acts complained of which he did within the limits of the highway.   The first question is, therefore, Was the alleged highway legally laid out?   The proceedings in that behalf are in evidence, and their valid-

ity is challenged chiefly because of the alleged insufficient and uncertain description therein of the proposed highway.

The line of the alleged highway is in section 36 in the town of Argyle. There is a highway extending across this section, from a point in the east line thereof about 100 rods south of the northeast corner, to near the northwest corner of the section. This highway is known as the Argyle and Monroe road. It crosses the east one-eighth section line, which runs north and south through the center of the east half of the section, at or very near the center of the northeast quarter of the section. The same line crosses another highway running northwest and southeast a short distance north of the south line of the section. Near the latter crossing there was formerly a residence known as the "old Edward Jacobs residence."

The petition for the highway describes the line thereof as follows: " Beginning at a point on the Argyle and Monroe road where the same crosses the east quarter section line of section thirty-six (36); thence running south on said quarter section line until it intersects the now traveled road near the old Edward Jacobs residence,—said highway asked to be laid out passing over lands owned by O. O. Kringley, Elias Fossnight, and N. D. Fossnight." The last person named owned the *locus in quo* when the proceedings were had, and afterwards conveyed the same to the plaintiff. The notice of the meeting of the supervisors to decide the application contains the same description of the proposed highway.

The order of the supervisors laying out the highway describes the line thereof as follows: "Beginning at a point on the Argyle and Monroe road where the same crosses the east quarter section line of section thirty-six (36); thence running south on said quarter section line until it strikes the center of the southeast quarter of section thirty-six (36), town three (3), range five (5); thence in a southwesterly

course till it strikes the now traveled road at a point fifteen (15) rods, by the now traveled road, southeast of the south quarter section line of said section thirty-six (36)." An appraisal of damages to the respective owners of lands over which the highway was laid, was made at the same time.

The argument in support of the proposition that the foregoing descriptions are so defective and uncertain that they do not indicate the line of location is founded mainly upon the employment therein of the term "east quarter section line." It is correctly said that such designation of a quarter section line is not found in the vocabulary of surveyors — the only proper quarter section lines being those which bisect the section through the center thereof and mark the interior boundaries of the quarter sections. The fact remains, however, that a section may be divided into four quarter sections by drawing three lines across it either east and west or north and south; one being a quarter line proper through the center of the section, and the others being drawn parallel thereto on either side, on the lines designated by the surveyors as the one-eighth section lines. Such a division by north and south lines would give an east, a center, and a west quarter section line. We are inclined to think that the term "east quarter section line," as used in the above proceedings, indicates such a division, and is only another mode of describing the north and south line through the center of the east half of the section which marks the interior east and west boundaries of the forty-acre subdivisions constituting the east half of the section. These observations also apply to and locate the line designated in the order of the supervisors as "the south quarter section line."

But, independently of the foregoing suggestions, we think the description of the line of the proposed highway in the petition may be located with certainty by reference to the *data* furnished by the petition itself. It calls for a high-

way on a line extending south from the Argyle and Monroe road to a road near the old Edward Jacobs residence.  It is fair to assume that the petitioners intended a north and south line recognized by the government survey, and no such line would reach the designated southern terminus of the proposed highway other than the east one-eighth section line.

Furthermore, the petition names the owners of the land along the proposed line of the highway, and it appears by the appraisal of damages that the persons so named owned all of the land abutting such line.  This would not be true of any other line.  Hence, if the term "east quarter section line" is meaningless, the petition contains sufficient description of the line of the highway to enable a surveyor readily to locate it.  *Falsa demonstratio non nocet cum de corpore constat.*  These considerations bring us to the conclusion that the proposed line of highway is sufficiently designated in the petition.

The order laying the road contains a more specific designation of the line thereof; for it runs such line from the starting point south to the center of the southeast quarter of the section.  This is a fixed point, easily located, and a line run thence north to the Argyle and Monroe road would be the line of the highway in question.  The southern terminus is located with certainty at a point in the old road fifteen rods southeast of the point where such road leaves the south one-eighth section line.  A line drawn from the center of the southeast quarter section southwesterly to such terminus is the last course called for in the order.  The route of the highway as laid accords substantially with that specified in the petition and notice.  By using the old road for a short distance, the southern terminus specified therein is reached, and the divergence from a straight line is but a few rods.

The notice of meeting of the supervisors to decide upon

the application for the highway sufficiently specifies the several tracts of land through which the same might pass. R. S. sec. 1267; *State ex rel. Sup'rs of Iola v. Nelson,* 57 Wis. 155. The same case upholds the finding of the court that such notice was properly posted and served.

These considerations impel us to the conclusion, which was also reached by the learned circuit judge, that the highway was legally laid out and established. Hence any of the acts complained of which were necessarily done by the defendant within the limits of the highway, in and about the opening of the same, were lawful acts, for which no recovery can be had in this action.

2. The evidence proves conclusively that the defendant went upon lands of the plaintiff, outside the limits of the highway, a few rods distant therefrom, and tore down and left open the plaintiff's fence. This was done to enable the defendant to get into a field (presumably the plaintiff's field) to get rock and timber with which to build a bridge on such highway, so as to put it in a condition for travel. The defendant believed, and the court found, that the entry was necessary to accomplish that object.

An overseer of highways may lawfully enter upon any lands adjoining to or near the highways in his district, and construct necessary drains or ditches for the improvement or preservation of such highways. He may also enter upon any *unimproved* lands so situated, and take therefrom stones, gravel, sand, trees, and timber, with which to make or improve such highways. R. S. sec. 1236. So, also, he may under certain circumstances open a track through any field or inclosure for the temporary accommodation of travel, when the highways are rendered impassable by snow-drifts. Sec. 1249. Further, it may be conceded that if the highway is impassable a traveler may lawfully pass over the adjoining lands.

The defendant was not a traveler upon the highway, and

is not in a position to claim the rights of a traveler. If he lawfully tore down the plaintiff's fence outside the limits of the highway, it is because the law gave him authority, as the overseer of highways, to do so. The plaintiff's land was fenced. It was therefore improved land, and the statute conferred no authority upon the defendant to enter upon it for the purpose of taking therefrom rock and timber. It matters not that the highway could in no other way be fitted for travel without great expense and trouble. The authority of the overseer to enter upon the plaintiff's land must be found in the statute, or it does not exist. Not finding such authority there, we are forced to the conclusion that the defendant was a trespasser when he tore down the plaintiff's fence outside the limits of the highway, and is liable to respond in damages therefor. The proof is that such damages are merely nominal.

*By the Court.*— The judgment is reversed, and the cause will be remanded with directions to the circuit court to render judgment for the plaintiff for six cents damages, with costs of suit.