Williams vs. Giblin.

---

WILLIAMS, Respondent, vs. GIBLIN, Appellant.

*September 26 — October 17, 1893.*

*Highways: Laying out and establishing: Jurisdictional requirements: Statutes curing irregularities: User: Abandonment.*

1. Sec. 59, ch. 19, R. S. 1858 (providing that the order laying out a highway shall be " competent evidence of the facts therein contained, and shall be *prima facie* evidence of the regularity of all the proceedings prior to the making of such order "), even if it had a retrospective effect, could only apply to such prior highways as were in actual existence when it went into effect.

2. Compliance with the requirements of the act of April 15, 1843 (Laws of 1843, p. 46), as to an application in writing by six or more freeholders, and as to written notice of the commencement and route of the proposed highway and of the meeting of the commissioners to make an examination and survey, was essential to the jurisdiction of commissioners to lay out a highway; and where such compliance is not recited in the order or otherwise shown it cannot be presumed by virtue of sec. 59, ch. 19, R. S. 1858.

3. Travel in the vicinity of the line surveyed for a highway, without any work thereon by the public authorities, would not prevent the extinguishment of the highway, under sec. 80, ch. 16, R. S. 1849, providing that "every public highway already laid out, no part of which shall have been opened and worked within four years . . . shall cease to be considered as a public highway."

4. The evidence in this case is *held* not to show adverse user of an alleged highway for ten years after sec. 80, ch. 16, R. S. 1849, went into effect.

5. Ch. 19, Laws of 1857 (providing that all highways laid out and recorded, any portion of which shall have been opened and worked for three years shall be deemed to be legal highways so far as so

opened and worked, notwithstanding the statutes may not have been in all respects pursued in laying them out), applied only to highways laid out and recorded by officers having jurisdiction of the subject matter, and was not intended to revive and validate a road which had previously ceased to be a public highway under sec. 80, ch. 16, R. S. 1849.

APPEAL from the Circuit Court for *Rock* County.

This action was commenced October 29, 1890, for unlawfully and with force breaking and entering upon the S. E. ¼ of the N. W. ¼ of section 22, township No. 4 N., of range No. 10 E., and cutting down and destroying one rod of the plaintiff's fence and one gate upon the plaintiff's said lands and possessions, September 19, 1890, and at divers other times, to the plaintiff's damage in the sum of $100.  The answer alleged, in effect, that the *locus in quo* was a public highway, and had been for more than forty years, and also that the defendant was entitled to it as a way of necessity.

A jury was waived in the cause, and at the close of the trial the court found, as matters of fact, (1) that September 19, 1890, the defendant unlawfully and with force broke and entered upon the plaintiff's lands described, and unlawfully and with force cut down and destroyed one rod of the plaintiff's fence and one gate upon the plaintiff's said lands; (2) that the damage thereby sustained by the plaintiff was the sum of three dollars; (3) that there was no public highway in the forty acres of land described, at the point where said one rod of fence and said gate were destroyed.  As conclusions of law the court found that the plaintiff was entitled to judgment for her damages of three dollars, and the costs of this action to be taxed, and that there was no public highway in or over said forty acres of land at the place named.  From the judgment entered upon said findings in favor of the plaintiff, the defendant appeals.

For the appellant there were briefs by *F. J. & C. F. Lamb,* and oral argument by *F. J. Lamb.*

For the respondent there was a brief by *Henry S. Sloan,* attorney, and *I. C. Sloan,* of counsel, and oral argument by *I. C. Sloan.*

CASSODAY, J. It is conceded that during the times in question the plaintiff was the owner and in possession of the south half of the northwest quarter of section 22, in the township of Union, Rock county; that for a great many years there has been a public highway, known as the "Union and Evansville Road," running north and south upon the east line of the plaintiff's land; that about a mile and a quarter west of that highway there has been, during the time mentioned, what is known as the "Madison and Beloit Road;" that in the record book of the town there appears to be the record of an order bearing date February 12, 1848, signed by two commissioners of highways, whereby it was ordered and determined by such commissioners, in effect, that a highway be laid out, to the width of three rods, from a point in the Union and Evansville road, about seven chains south of the northeast corner of the plaintiff's land, in almost a westerly direction, to the Madison and Beloit road, according to a survey given; that the trespass alleged and proved consisted in removing and cutting down a portion of the fence and a gate on the east forty of the plaintiff's land; and that there is no evidence of any notice to any of the owners of lands over which the alleged highway passed, of the laying out of the same, nor of the meeting of commissioners, nor of the awarding of damages, nor any paper respecting the same, except the record of the order mentioned. The contention is that that record must, under sec. 59, ch. 19, R. S. 1858, "be received in all courts. and places as competent evidence of the facts therein contained," and must be regarded as "*prima facie* evidence of the *regularity* of all the proceedings prior to the making of such order." Sec. 1298, R. S. 1878. Such order, how-

ever, has never been regarded as *conclusive* evidence of any-
thing.  *Roehrborn v. Schmidt,* 16 Wis. 519; *Williams v.
Mitchell,* 49 Wis. 284; *State v. Logue,* 73 Wis. 598; *State ex
rel. Jenkins v. Harland,* 74 Wis. 11.    There is no claim
that the section cited went into effect prior to the Revised
Statutes of 1858,— more than ten years after the alleged
laying out of the roadway in question.    Prior to that stat-
ute, a party seeking to justify an alleged trespass upon the
lands of another on the ground that the *locus in quo* was a
public highway, had the burden of proving that all the
essential steps required by the statutes to establish such
highway had been regularly and properly taken.    *Will-
iams v. Holmes,* 2 Wis. 129; *Austin v. Allen,* 6 Wis. 134;
*Babb v. Carver,* 7 Wis. 124; *Damp v. Dane,* 29 Wis. 419;
*Ruhland v. Hazel Green,* 55 Wis. 664.    Moreover, the sec-
tion of the statutes cited only undertakes to make such
order " competent evidence of the *facts therein contained,*"
and *prima facie* evidence of the *regularity* of all prior pro-
ceedings.    Assuming that the section cited had a retro-
spective effect, yet it could only apply to such prior public
highways as were in actual existence at the time the sec-
tion went into effect.    In other words, it could not have
the effect of creating a public highway where none previ-
ously existed.

The original order, in the case at bar, is not in evidence,
but merely a supposed copy of it, found in the record book
of the town.    This copy merely recites a meeting of two
of the commissioners, pursuant to a notice to all to attend
such " meeting for the purpose of *deliberating* upon the sub-
ject matter of this order," and that they had " caused a
survey thereof to be made," as indicated.    It does not re-
cite that any applications, in writing or otherwise, had been
made to the commissioners by " six or more freeholders "
of the town, as required by sec. 1 of the act of April 15,
1843, then in force, nor that the commissioners had given

notice, in writing, of the "commencement and route of such proposed highway," and "the several tracts of land through which the same" was proposed to be laid, as required by sec. 5 of the same act, nor that the commissioners had given notice, in writing or otherwise, of "the time and place at which" they would "meet to make such examination and survey," as required by the same section. Terr. Laws of 1843, p. 46. See secs. 50, 53, ch. 16, R. S. 1849; secs. 53, 56, ch. 19, R. S. 1858; secs. 1265, 1267, R. S. 1878. These several requirements of such statute then in force, and which were not mentioned in the order nor proved upon the trial, were clearly jurisdictional, and not such mere irregularities as sec. 59, ch. 19, R. S. 1858, was designed to cover, as to then existing public highways. Such jurisdictional facts cannot be assumed upon mere presumption. *Isham v. Smith,* 21 Wis. 32; *State v. Langer,* 29 Wis. 68; *State v. Castle,* 44 Wis. 670; *Ruhland v. Hazel Green,* 55 Wis. 664; *State ex rel. Witte v. Curtis, ante,* p. 140.

Sec. 80, ch. 16, R. S. 1849, provided that "every public highway *already laid out,* no part of which shall have been *opened and worked* within four years from the time of its being so laid out, . . . shall cease to be considered as a public highway." Sec. 85, ch. 19, R. S. 1858; sec. 1294, R. S. 1878. Even had the road in question been legally laid out, yet, if no part of it was "opened and worked" prior to February 12, 1852, then, in the language of the section last cited, it would have "ceased to be considered as a public highway" thereafter. We cannot say, from the evidence before us, and especially as against the findings of the trial court, that any part of the route described in the order as having been surveyed was ever "*opened and worked*" prior to February 12, 1852. True, many years ago, when the lands along that route and vicinity were uncultivated and unfenced, there was more or less travel, in an easterly and westerly direction, in the vicinity of the line so surveyed,

and possibly such travel touched upon or crossed that line at one or more places; and it may be that such travel, had it been upon the line of the road so surveyed, would be regarded as an opening of the road within the meaning of the statutes cited; but, even then, we should be unable to find from the evidence that any portion of *that line* was ever "worked" by the public authorities. We do not say that the portion of the road opened or traveled should necessarily have been upon the precise route so surveyed, in order to prevent the road from becoming vacant by virtue of the statute last cited, but it should be substantially along that route.

We conclude that no public highway was ever legally laid out, and that, even if it had been, it would have ceased to be such public highway February 12, 1852, for the reason that no part thereof had been opened and worked prior to that date. If the *locus in quo*, therefore, at the time of the alleged trespass, was a public highway, it is because it had become such either by express or implied dedication, or by adverse user under some other provision of the statute. The learned counsel for the defendant expressly disclaim that they are seeking to establish a public highway by such dedication, and we are therefore relieved from considering that question. Counsel especially invoke that portion of sec. 80, ch. 16, R. S. 1849, which reads: "All roads not recorded which *shall hereafter* be used *ten years* or more shall be deemed public highways." Sec. 85, ch. 19, R. S. 1858; sec. 1294, R. S. 1878. That section went into effect January 1, 1850, and hence no such public highway could be established thereunder by virtue of such ten years' adverse user until January 1, 1860. The mere fact that the defendant claims under the record of a road which we have held to have been illegal does not prevent the defendant from availing himself of the provision of the statute last quoted, if the evidence otherwise brings the case

within it. The evidence is voluminous, and we cannot go
into details; but from a careful examination of the whole
record we do not feel justified, especially as against the
findings of the trial court, in holding that the *locus in quo*
had been used as a public highway during the ten years
mentioned, nor for any period of ten years prior to the
alleged trespass. Confessedly, Williams fenced his lands
and put gates, including the one in question, at different
places across this alleged highway, as early as 1865, and
maintained the same ever since, except when broken down
or removed by others. Such fences and gates were con-
tinuous protests by him, as landowner, against the existence
of any such *public* highway.

Counsel cite ch. 19, Laws of 1857 (sec. 86, ch. 19, R. S.
1858; sec. 1295, R. S. 1878), which declares, in effect, that
"all highways *laid out* and recorded, any portion of which
shall have been opened and worked for the term of three
years . . . are hereby declared to be legal highways
so far as they have been so opened and worked, notwith-
standing the statutes may not have been in all respects
pursued in laying out the same." This last clause was in-
tended to obviate mere irregularities, and not jurisdictional
facts. Moreover, the act was only intended to apply to
highways which had already been laid out and recorded by
officers having jurisdiction of the subject matter, or those
which should thereafter be so laid out and recorded by
such officers. For reasons already given, the road in ques-
tion was not so laid out and recorded. The act was cer-
tainly never intended to revive and validate a road which
had previously ceased to be a public highway by reason of
not being opened and worked within four years from the
time it was laid out, as required by sec. 80, ch. 16, R. S.
1849, for the obvious reason that that section was never
repealed, but was continued in force by sec. 85, ch. 19, R. S.
1858, and sec. 1294, R. S. 1878. The one section was in-

tended to validate legally laid out public highways not-
withstanding any mere irregularities in laying out the
same, provided they were so opened and worked within
the three years mentioned; and the other was intended to
vacate any public highway, notwithstanding it had been
legally laid out, provided no part of it had been opened and
worked within the four years mentioned. The view we
have taken of the evidence, as already expressed, makes it
obvious that ch. 221, Laws of 1861, is not applicable, and
therefore does not operate to bar this action.

*By the Court.*— The judgment of the circuit court is af-
firmed.