SCHROEDER, Appellant, vs. KLIPP, Respondent.

*December 14, 1903—January 12, 1904.*

*Highways: Discontinuance: Lost record: Secondary evidence: Order*
*of supervisors as evidence: Persons entitled to notice: Abut-*
*ting occupants: Order: Validity: Stipulation in open court: En-*
*forcement.*

1. It being shown that an order discontinuing a highway was lost
   or destroyed, its contents can be established by secondary evi-
   dence, and being so established it is to have the same effect
   as though it had never been lost or destroyed.
2. Under sec. 1298, Stats. 1898 (providing that an order discontinu-
   ing any highway shall be *presumptive* evidence of the facts
   therein stated and of the regularity of all the proceedings prior
   to making of such order), an order discontinuing a highway
   does not raise a conclusive presumption that all requisite no-
   tices of the meeting of the board of supervisors had been given,
   but the presumption mentioned in the section may be over-
   come by evidence.
3. Under sec. 1267, Stats. 1898 (providing that on an application
   for the discontinuance of the whole or any portion of a high-
   way, notice shall be given "to the occupants of all the lands
   abutting or touching on such highway, the whole or any part
   of which is sought to be discontinued"), when only a portion
   of a highway is sought to be discontinued, the occupants of
   lands abutting on the portion of such highway not sought to
   be discontinued are entitled to have notices served upon them.
4. It appeared, among other things, that the highway in question,
   part of which was alleged to have been discontinued, extended
   east and west between sections 3 and 10; that there was a
   north and south highway along the west side of said sections
   intersecting the same, and about eighty rods west of the north-
   east corner of section 10 a highway ran in a northwesterly di-
   rection.   The portion discontinued extended west from the high-
   way running northwesterly for about one third of the distance
   to the intersection with the north and south highway.   *Held*,
   that occupants of the northeast quarter of the northeast quar-
   ter of section 9, and the southeast quarter of the southeast
   quarter of section 4, were abutting occupants at the west end
   of the highway, part of which was discontinued, and failure
   to serve them with notice as required by sec. 1267, Stats. 1898,
   was fatal to the proceedings.

5. In such case, failure of the supervisors *at the time of* making the order discontinuing such portion of such highway, to assess the damages which such abutting occupants sustained, or to procure their waiver or release or to file such award, waiver or release with the town clerk within ten days after their decision on the application, vitiated the proceedings.

6. In an action for trespass in removing fences, the defendant justified on the ground that the *locus in quo* was a highway. Before the introduction of any evidence the parties stipulated that "up to the time of the attempted discontinuance the *locus in quo* was a highway." After the trial had proceeded, including a considerable portion of the defense, plaintiff attempted to prove that the defendant, in removing the fence, "went outside of the old highway itself, as it formerly existed" and while he admitted "that there was travel over the place, and that a highway had been laid out there," yet he contended "that the highway as traveled was not the highway laid out." *Held*, that defendant having prepared his testimony and tried his case on the faith of the stipulation, it was not error to rule that such stipulation was binding on the plaintiff.

7. In such case, the mere fact that the highway as traveled was not the highway as laid out is not ground for claiming that the *locus in quo* is outside the highway.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This is an action for trespass *quare clausum fregit,* commenced before a justice of the peace June 14, 1902. The defendant answered by way of admissions, denials, and counter allegations to the effect that the *locus in quo* was at the time in question a public highway; that the plaintiff willfully and without authority placed obstructions in the same, and the defendant, as overseer of the highways of the town, and as his duty required of him, removed such obstructions. The defendant thereupon gave the requisite bond, and the cause was removed to the circuit court. The cause having been reached for trial in the circuit court, and before any testimony was introduced, the following stipulation was entered into:

"It is admitted by both parties that up to the time of the attempted discontinuance the *locus in quo* was a highway. It

is also admitted that the title and right of possession to the land at that point is in the plaintiff, and that the fences that were on the premises were removed by the defendant at a certain time."

The evidence is undisputed, and to the effect that December 2, 1901, the chairman of the town board of supervisors received the following petition:

"To the Supervisors of the Town of Westfield in Sauk County, Wisconsin:

"We, the undersigned, freeholders and residents of said town, hereby make application to you to discontinue a highway in said town as follows: All that portion of road lying east of the residence of *Carl Schroeder* to the intersection of a road running northwest past the residence of George A. Meyer, all of said road asked to be discontinued is on the section line between sections three and ten.

"Dated at Westfield this 28th of November, 1901."

There were thirteen subscribers to that petition, including the plaintiff. According to the oral testimony, the town board held a meeting December 2, 1901, at the house of the town clerk, Fred Jiles. The board then agreed to meet at two o'clock in the afternoon of December 14, 1901, at the house of the plaintiff, to decide upon the petition. The town board met at the house of the plaintiff December 14, 1901, pursuant to notice prepared by the town clerk, as directed by the board, and posted in three or four public places, describing the lands through which the portion of the highway proposed to be discontinued passed, as stated in the petition. In addition to the board, there were present at that meeting the plaintiff and George Meyer, both of whom signed the petition, but no one else. At that meeting the board looked over the grounds of the road, and decided unanimously to discontinue the portion of the road according to the petition, and directed the clerk to draw an order to that effect, according to a prescribed form, and thereupon adjourned to December 16, 1901, at the clerk's office. The clerk thereupon drew

such order, and on December 16, 1901, the respective members of the board, to wit, Henry Steckelberg, William Schroeder, and William Kohlmeyer, separately from each other, signed the order, and the same was marked "Filed" by the clerk. The clerk, Fred Jiles, was an invalid at the time, and died two weeks afterwards. Thereupon a new clerk was appointed, and diligent search was made for such order, but no such order was ever found; and the only evidence of the existence and contents of such order is the oral testimony of the three several members of the board, who separately, and in the absence of each other, signed the same. In May, 1901, the plaintiff fenced off the portion of the road so claimed to be discontinued, and notified the defendant, as the overseer of highways, of such discontinuance. May 28, 1901, the defendant removed such fences. Thereupon the plaintiff again fenced up such road, and the defendant again removed the fences June 13, 1902. The removal of such fences by the defendant is the ground upon which the plaintiff seeks to maintain this action. At the close of all the testimony the court granted a nonsuit, and from the judgment entered thereon the plaintiff brings this appeal.

For the appellant there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans* and *H. H. Thomas.*

For the respondent there was a brief by *Stone & Malone,* and oral argument by *James A. Stone.*

CASSODAY, C. J. 1. It appears, and is undisputed, that for many years prior to December 14, 1901, there was a public highway running east and west on the line between sections 3 and 10 in the town of Westfield, in Sauk county, and that the same continued east indefinitely. It is a portion of that highway which is claimed to have been discontinued. That highway, at the west end thereof, intersected another highway running north and south on the west lines of sections 3

and 10. From the northeast corner of that section 10 there was a highway running south from the highway in question, on the east line of that section. From a point in the highway in question, about forty rods west of the northeast corner of that section 10, there was another highway "running northwest past the residence of George A. Meyer," as mentioned in the petition. The petition was for the discontinuance of "all that portion" of the east and west highway in question lying "east of the residence of *Carl Schroeder* to the intersection" of the "road running northwest past the residence of George A. Meyer." The residence of the plaintiff, *Carl Schroeder,* appears to have been south of the highway in question, and some 180 rods east of the west line of that section 10, and about eighty or ninety rods west of the intersection of the highway in question with the road running northwest past Meyer's residence. In other words, the portion of the road claimed to have been discontinued constituted about one third of the highway in question, between its intersections with the north and south road at the west and the northwest road at the east. The important question is whether it was legally discontinued. The trial court held that it was not legally discontinued, for want of the requisite notices of the meeting of the board December 14, 1901, and for the further reason that the contents of the order of discontinuance were never agreed upon by the board acting as a body, but were written by the clerk, and then signed by each member of the board in the absence of the others. The statute declares:

"Whenever the supervisors shall . . . discontinue any highway, they shall make and sign an order therefor, incorporating therein a description of the highway so . . . discontinued, . . . and such order shall be filed and recorded in the office of the town clerk, who shall note the time of recording the same in the record. Such order, together with the award of damages . . . shall be so filed within ten days after the day fixed by their notice or adjournment for

deciding upon such application; and in case such supervisors shall fail to file such order and award within the ten days. aforesaid they shall be deemed to have decided against such application." Sec. 1269, Stats. 1898.

Counsel raise the question whether the contents of the order, as finally written, should not have been agreed upon by the board, acting together, and then signed by them. But for the purposes of this appeal we shall assume that the order was in the proper form, and was agreed upon by all the members of the board, and then signed by them and filed with the clerk. Upon such assumption, it is obvious that, the order being lost and destroyed, its contents could be established by secondary evidence. Being so established, as we assume it was, it is to have the same effect as though it had never been lost or destroyed. Counsel for the plaintiff contend that such order, so established, raised a conclusive presumption that all requisite notices of the meeting of the board had been given. In support of such contention counsel cite *State ex rel. Iola v. Nelson,* 57 Wis. 147, 15 N. W. 14; *Jackson v. Rankin,* 67 Wis. 285, 30 N. W. 301. But neither of those cases refers. to the section of the statute which must govern in the case at bar, and which declares:

"The order of the supervisors . . . discontinuing any highway . . . and the record or a certified copy thereof, shall be *presumptive* evidence of the facts therein stated and of the regularity of all the proceedings prior to the making of such order." Sec. 1298, Stats. 1898.

That section has been in force for many years, and the decisions of this court are numerous to the effect that the presumption mentioned in the section may be overcome by evidence. *Roehrborn v. Schmidt,* 16 Wis. 519; *Neis v. Franzen,* 18 Wis. 537; *Williams v. Mitchell,* 49 Wis. 284, 5 N. W. 798; *State v. Logue,* 73 Wis. 598, 41 N. W. 1061; *State ex rel. Jenkins v. Harland,* 74 Wis. 11, 41 N. W. 1060; *Williams v. Giblin,* 86 Wis. 147, 149, 150, 56 N. W. 645.

2. This makes it important to consider what notices of the meeting of the board December 14, 1901, were required by the statutes, and whether the evidence shows that any of such notices were not given. The statute declares:

"On application made to supervisors for laying out, widening, altering or discontinuing any highway they will make out a notice fixing therein a time and place at which they shall meet and decide upon such application. The applicants shall, at least five days previous to such time, cause such notice to be given to all the occupants of the lands through which such highway may pass; and in case such application shall be for the discontinuance of the whole or any portion of the highway such notice shall be given to the occupants of all the lands abutting or touching on such highway the whole or any part of which is sought to be discontinued, which notice shall be served personally or by copy left with or at the usual place of abode of such occupant of such lands, and such notice shall also be posted up in three public places in said town at least ten days before the time of such meeting of the supervisors." Sec. 1267, Stats. 1898.

Just what is meant by the whole highway, a portion of which is thus sought to be discontinued, may not in all cases be easily determined. In the case at bar it certainly includes all of the highway on the line between sections 3 and 10. The occupants of lands abutting upon the portion of such highway not sought to be discontinued were entitled to have notice served upon them personally or by copy just as much as the occupants of lands abutting upon the portion of such highway so sought to be discontinued. It required the whole of such highway to enable public travel to pass from one of such intersecting highways to the other. Here it is in evidence and admitted that the lands of Henry Koenecke abutted upon the west end of that highway, on both sides, for a distance of eighty rods, and that he occupied the same, but that there was no proof made before the town board that the notice of the meeting of December 14, 1901, required by the section of the statute last cited, had been served on him

personally or by copy as therein required. The same is true of Fred Huebing, who owned and occupied the northeast quarter of the northeast quarter of section 9, and which abutted upon the west end of the highway in question. The same is true of the defendant in this action, who owned and occupied the southeast quarter of the southeast quarter of section 4, which also abutted upon the west end of the highway in question. The supervisors were only authorized by the statutes to "proceed to examine personally such highway," and to "hear any reason" that might "be offered for or against . . . discontinuing the same," and "decide against the application upon being satisfied that the notices required in" sec. 1267 of the statute had "been duly given." Sec. 1268, Stats. 1898. The town board, as well as the petitioners, obviously acted upon the theory that the statutes only required such notices to be given to the occupants of lands abutting upon the portion of the highway so proposed to be discontinued. The four owners and occupants of the lands abutting upon the portion of the highway so sought to be discontinued signed the petition for the same, and thereby waived the necessity of such notice, as to them. And yet, even as to such petitioners, this court has held:

"Though the owner of land over which it was attempted to lay out a highway signed the petition therefor and hence was not entitled to notice of the meeting of the supervisors, yet he may avail himself of the want of notice to the public and other owners, to invalidate the proceedings." *State v. Logue,* 73 Wis. 598, 601, 41 N. W. 1061, 1062.

In that case, Mr. Justice TAYLOR, speaking for the court, said:

"The evidence of the defendant also establishes the fact that the notices of the application for laying out the highway, and of the time and place when and where they would meet to consider such application, which are required to be given by sec. 1267, R. S. 1878, were not in fact given. That the failure to give the notice required by said section is fatal to

the proceedings of the supervisors in laying out a highway has been frequently decided by this court." Citing numerous cases. See, also, *Williams v. Giblin,* 86 Wis. 150, 151, 56 N. W. 645.

Manifestly, the failure to serve such notice personally or by copy upon such abutting occupants of lands on such highway, at the west end thereof, was fatal to the proceedings.

3. Besides, one of the sections of the statutes quoted above provides, in effect, that the order discontinuing a highway or any portion thereof, "together with the award of damages" therefor, shall be filed in the office of the town clerk "within ten days after" the decision upon the application, and, in case of failure to so "file such order *and award* within" the ten days, the supervisors "shall be deemed to have decided against such application." Sec. 1269, Stats. 1898. The next section provides that in case such owner fails to agree with the supervisors as to the compensation to be received, or gives a written release of all claims for damages, the "supervisors shall, *at the time* of making such order, assess the damages which such owner shall sustain." Sec. 1270, Stats. 1898. It is enough to say that in the case at bar there is no claim or pretense that any damages were ever assessed or released or waived by any abutting owner—much less, by the three abutting owners at the west end of the highway in question— or that any award of damages was ever filed in the office of the town clerk. We must hold that the order purporting to discontinue a portion of the highway in question was a nullity.

4. After having stipulated before any evidence was introduced that the *locus in quo* was a highway up to the time of the attempted discontinuance, and the trial had proceeded, and testimony taken which covers thirty-eight typewritten pages, including a considerable portion of the defense, counsel for the plaintiff attempted to prove that the defendant, in removing the fence, "went outside of the old highway it-

self, as it formerly existed," and while he admitted "that there was travel over that place, and that a highway had been laid out there," yet he contended "that the highway as traveled was not the highway as laid out." Counsel for the defendant insisted that upon the faith of the stipulation they had prepared their testimony and tried the case, and the trial court thereupon held that such stipulation was binding upon the plaintiff. We have no doubt of the correctness of such ruling. Besides, the mere fact "that the highway as traveled" was "not the highway as laid out" is no ground for claiming that the *locus in quo* was outside of the highway. *Neis v. Franzen,* 18 Wis. 537; *Fitzgerald v. Berlin,* 64 Wis. 203, 24 N. W. 879. We must hold that the nonsuit was properly granted.

*By the Court.*—The judgment of the circuit court is affirmed.

SIEBECKER, J., took no part.