Bartlett v. Eau Claire County. 112 Wis. 237.

BARTLETT, Appellant, vs. EAU CLAIRE COUNTY, Respondent.

*November 6 — November 29, 1901.*

*County board: Records: Collateral attack: Special meeting: Sufficiency of request: Compensation of officers in "tramp" cases: Resolution of county board: Construction: Adoption: Reasonableness: Evidence.*

1. The record of the proceedings of a county board kept in a book by the clerk, pursuant to sec. 709, Stats. 1898, cannot be contradicted or assailed collaterally by parol testimony.

2. A resolution adopted by a county board under subd. 6a, sec. 1547d, S. & B. Ann. Stats., prescribing fees for tramp cases, "to the constable or sheriff for each arrest $.50; to police conviction $1.00." does not so clearly indicate an intention to regulate the compensation of the municipal judge in tramp cases, or to change that prescribed by general law, as to warrant the court in giving it such a construction.

3. When the request for the calling of a special meeting of the county board on its face satisfies the requirements of sec. 664, Stats. 1898, a meeting held in pursuance thereof is presumptively legal.

4. Such a request being signed, when delivered to the county clerk, by eighteen of the twenty-seven members of the board, evidence that the date of the meeting was inserted therein after "a few signatures" had been affixed, does not show that the required majority of the board did not sign after such insertion.

5. The request, dated January 10, being that the clerk call a special meeting of the county board "at the court house in the city of Eau Claire, for the purpose of considering the report of the special committee on the tramp question," it is immaterial whether the date for the meeting "Jan. 23d, 11 a. m.," interlined before delivery to the clerk, was inserted after the name of the city or after the word "report."

6. At a special meeting of the county board called to consider the report of a special committee on the "tramp question," the board "adopted" such report, which embodied a resolution fixing the fees of officers in tramp cases, and took no further action on the question at the time, but afterwards acted on the assumption that the resolution had been adopted as the resolution of the board. *Held*, that it had been so adopted.

7. A resolution of a county board fixing the fees of magistrates in "tramp" cases at twenty-five cents for all services performed, is *held* to have been a reasonable exercise of the power conferred by subd. 14, sec. 669, Stats. 1898, it appearing, among other things, that such cases were very numerous and could often be disposed of *en masse*.

8. The exclusion of the opinion of a magistrate as to the reasonable value of his services in such cases, is *held*, if erroneous, not to have been a material error, since the question of the reasonableness of the action of the county board in fixing the fees was one for the court, and the opinion of the witness could hardly have enlarged the knowledge of the court.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Modified and affirmed.*

Suit by plaintiff to recover his fees as municipal judge of the city of Eau Claire for services rendered in so-called "tramp cases" from November 1, 1895, to the date of his bill, February 27, 1896. Seven hundred and nineteen cases are charged, for which in the bill the sum of $1.90 is set against 715, and the others are charged at $2.15 and $2.65. No question seems to be raised that fees at the statutory rate would equal the amounts charged. The total of this bill — $1,367.60 — was cut by the county board to $645.85. An additional sum of $52.20 was allowed by the court, the

disallowance in both cases being upon the ground that at the annual session of the county board in November, 1895, and again at a special meeting in January, 1896, were passed resolutions limiting the fees of certain officers in tramp cases. The record of the regular meeting in November discloses a resolution limiting fees after November 30th in accordance with ch. 65*a*, S. & B. Ann. Stats., as follows: "To the constable or sheriff for each arrest, $.50; to police conviction, $1.00." The court finds that the resolution as passed provided: "To the constable or sheriff for each arrest, $.50; to the police judge for each conviction, $1.00." It appears that in the county of *Eau Claire* are numerous justices of the peace having statutory jurisdiction, three police justices in certain cities and villages of the county, and one municipal judge of the city of Eau Claire, having jurisdiction to try such cases and entitled by the statute to the same fees as justices.

It is further found that in January a writing signed by eighteen of the twenty-seven members of the county board of *Eau Claire County* was presented to the county clerk, whereby he is "ordered to call a special meeting of the county board of supervisors at the court house in the city of Eau Claire January 23d, at 11 o'clock a. m., for the purpose of considering the report of the special committee on the tramp question, and for the transaction of such other business as may lawfully come before the meeting;" that when the county clerk first saw that paper the date of the meeting was left blank, and it bore certain of its present signatures, but how many is not ascertained; that when such paper was formally filed the date was inserted and the eighteen signatures appeared thereon. At that special meeting a committee, which had been appointed at the regular session to take the tramp question under consideration and designate what kind of labor system should be adopted and to report, made its report containing a discussion and ex-

pression of opinion as to the tramp evil, and accompanied by recommendation of adoption of certain resolutions; among others:

"*Resolved*, by the county board of *Eau Claire County*, that from and after this date the fees or compensation of the sheriff, constables, police officers, and magistrates for services performed under ch. 470, Laws of 1887, be, and they are hereby, fixed by this board as follows."

Schedule of fees includes, "To the municipal judge or magistrates for all services performed thereunder, 25 cts." The record of proceedings discloses:

"It was moved by Sup. Taggart, one of the members of said board, that the report of said committee and the communication of Mayor Day be adopted. A discussion was had by said board upon such report, and thereupon the report was adopted by said board."

The court held both of these resolutions effectual to limit the fees of the plaintiff to the amounts specified in the resolutions, to wit, one dollar in each case from December 1st to January 23d, and twenty-five cents in each case from January 24th onward. From judgment in accordance with such holding, plaintiff appeals.

*T. F. Frawley*, for the appellant, contended, *inter alia*, that the record of the proceedings of the board of supervisors, being a record required to be kept by law, cannot be varied or modified by parol evidence, and is the only lawful evidence of the action of the board to which such record refers. Starkie, Ev. (10th Am. ed.), 648; *Miner's Lessee v. McLean*, 4 McLean, 138; *Sherman v. Story*, 30 Cal. 253; *Boston T. Co. v. Pomfret*, 20 Conn. 589; *Koehler v. Hill*, 60 Iowa, 543; *State ex rel. McClendon v. Simmons*, 40 La. Ann. 758; *Thayer v. Stearns*, 1 Pick. 109; *Andrews v. Boylston*, 110 Mass. 214; *Manning v. Fifth Parish in Gloucester*, 6 Pick. 6; *Stevenson v. Bay City*, 26 Mich. 44; *People ex rel. Burr v. Zeyst*, 23 N. Y. 140; *Noble Co. Comm'rs v. Hunt*, 33 Ohio St. 169; *State ex rel. Herron v. Smith*, 44 Ohio St. 348; *State ex rel. Eckhardt v. Hoff*, 29 S. W. Rep. 672; *Slack*

*v. Norwich*, 32 Vt. 818; *Montgomery B. B. Works v. Gaston*, 51 L. R. A. 396; *Mayhew v. Gay Head Dist.* 13 Allen, 129; *Halleck v. Boylston*, 117 Mass. 469; *Third Sch. Dist. v. Atherton*, 12 Met. 105; *Beebe v. Scheit*, 13 Ohio St. 406; *Crommett v. Pearson*, 18 Me. 344; *Kerr v. Corsicana*, 35 S. W. Rep. 694. The unreasonableness of these resolutions not appearing upon their face, it was error to exclude proof tending to show what the plaintiff's services were reasonably worth. *Corrigan v. Gage*, 68 Mo. 541; *Dayton v. Quigley*, 29 N. J. Eq. 77; *Kipp v. Paterson*, 26 N. J. Law, 298; *State v. Jersey City*, 37 N. J. Law, 348; *Delaware, L. & W. R. Co. v. East Orange*, 41 N. J. Law, 127; *Hayes v. Appleton*, 24 Wis. 542; *Clason v. Milwaukee*, 30 Wis. 316; *Atkinson v. Goodrich T. Co.* 60 Wis. 141.

*De Alton S. Thomas*, district attorney, for the respondent, argued, among other things, that a resolution properly and legally adopted is binding upon all public officers affected thereby, even though improperly printed or copied in the minute book by the clerk, as the minutes or records may be corrected at any time when the error or omission is discovered. *Bank of U. S. v. Dandridge*, 12 Wheat. 64; *Higgins v. Reed*, 8 Iowa, 298; *Taymouth v. Koehler*, 35 Mich. 22, 25; *Bigelow v. Perth Amboy*, 25 N. J. Law, 297; *San Antonio v. Lewis*, 9 Tex. 69; *U. S. v. Fillebrown*, 7 Pet. 28; *Hutchinson v. Pratt*, 11 Vt. 402; *Westerhaven v. Clive*, 5 Ohio, 136; *Athearn v. Independent Dist. of Millersburg*, 33 Iowa, 105.

DODGE, J. 1. The first question presented by several assignments of error is as to the efficacy of the resolution adopted by the county board at its regular meeting in November, 1895, under authority of subd. 6*a*, sec. 1547*d*, ch. 65*a*, S. & B. Ann. Stats., prescribing fees in tramp cases: "To the constable or sheriff for each arrest, $.50; to police conviction, $1.00." That such was the verbiage of the resolution adopted appears by the record of the proceedings of the

supervisors of the county, preserved by the clerk in a book. The court permitted this record to be assailed by the testimony of one of the supervisors to the effect that a different resolution was offered and was adopted, and based a finding thereon. In that respect he was in error. The records of such bodies as county boards, required to be kept by law, cannot be contradicted or assailed collaterally by parol testimony. To permit that would subvert the entire purpose of the statute in requiring the making of the record. The legislature has deemed that the welfare of the community at large will be promoted by reliance upon a record which shall be made by a public officer under the sanction of his oath of office and under the penalties for breach thereof, rather than upon proof of what transpires at county board meetings from the memory of those who were present and had knowledge thereof. Stats. 1898, sec. 709, subd. 1, 2; *Third School Dist. v. Atherton,* 12 Met. 105; *Mayhew v. Gay Head Dist.* 13 Allen, 129, 134; *Halleck v. Boylston,* 117 Mass. 469; *Eastland v. Fogo,* 58 Wis. 274.

This resolution doubtless should be given effect so far as the intention of the county board can be ascertained from its words, in the light of any known surrounding circumstances. On the other hand, a purpose to change the compensation of a particular officer prescribed by general statutes must be reasonably clear to warrant adoption of such construction. The meaning contended for by respondent and adopted by the trial court, namely, to limit compensation of municipal judge in all tramp cases to $1, certainly requires an extraordinary stretch of the words used. Neither is the municipal judge named, nor the justice of the peace, by whose fees the plaintiff's are measured in the statute. The words do not suggest any judicial officer or function. They are certainly as well adapted to suggest compensation to police or other executive officers for services on conviction subsequent to arrest. They provide only for cases of

conviction, and the making of compensation to judicial offi-
cers dependent on whether they convict or acquit would be
so highly improper as to exclude that construction unless
unavoidable. *Southworth v. U. S.* 151 U. S. 179, 185. In short,
we are unable to subscribe to the view that the county board
did by this resolution regulate the compensation of the mu-
nicipal judge, or in any way limit or change that prescribed
by general laws. We must therefore hold that for the 495
cases heard and disposed of between November 30, 1895,
and January 23, 1896, plaintiff should have recovered, as for
the preceding period, $1.90 in each of 330 cases where com-
mitments were issued and $1.86 in each of the 165 cases of
discharge, viz. $912.90, instead of the $495 allowed by the
county board and by the circuit court; an additional recov-
ery of $417.90, plus interest from March 14, 1896, viz.
$108.05 — total, $525.95.

2. The existence of any valid resolution as of a special
meeting on January 23, 1896, is denied on two grounds:
first, that no legal meeting was held, because of defects in
the request to call it; and, secondly, because the proceedings
appearing of record do not constitute adoption of the reso-
lution fixing compensation. Of these in their order.

That a meeting assumed to be legal was in fact held is
not questioned. Nor is there doubt that the notices there-
for were based upon a paper writing, which, when finally
delivered to the county clerk, bore the signatures of four
more than the required majority of the supervisors, and in
terms requested a special meeting to be called on January
23d at 11 o'clock. We deem unimportant the asserted con-
fusion as to where the interlined date of meeting should be
inserted. The evidence in the bill of exceptions quite clearly
supports the finding that such request read as set forth in
the statement of facts herewith, but the insertion of such
date and hour elsewhere after the word "report," as con-
tended for by appellant, could not change the meaning.

The words "January 23d, at 11 a. m.," in such paper dated January 10, 1896, could indicate nothing but the date of the proposed meeting to any ordinary mind.

The request thus presented on its face satisfied the calls of sec. 664, Stats. 1898, for the calling of a special meeting of the board, and a meeting held in pursuance thereof is presumptively legal and valid. *Wayne Co. Sup'rs v. Wayne Circuit Judges,* 106 Mich. 166; *Prezinger v. Harness,* 114 Ind. 491; *State ex rel. Sup'rs of Iola v. Nelson,* 57 Wis. 147, 153; *Jackson v. Rankin,* 67 Wis. 285, 290. The burden of proof, therefore, was upon the appellant, who would overcome this presumption. The only attempt to lift that burden was to show that at some time prior to the completed signature of the call or request for the special meeting, the date thereof was not included, and at that time was written in by the supervisor circulating it. This proof does not exclude possibility that such supervisor was expressly authorized so to do by those who had theretofore signed, nor that he afterward and before final presentation obtained their approval and reaffirmance of their signatures. We need not, however, decide whether a presumption may be indulged in favor of either of these validating circumstances, for there is no proof that a majority — fourteen — of the supervisors did not sign thereafter. The presence of the paper with signatures raises presumption of due signing by all. The proof overcomes it, if at all, only to the extent of a "few signatures; I don't know how many." This does not establish that more than four signatures preceded the insertion of the date of meeting. The circuit court was right in holding the meeting of January 23, 1896, valid.

The next question is whether the record of the meeting of January 23, 1896, discloses that the county board exercised its power under the statute above cited to fix and regulate the fees of certain officers, including the appellant, in tramp cases. It was entirely within the power and compe-

tency of that board so to do, and the statute imposes no form or method of procedure to accomplish the result. If it can reasonably be deduced from the record that the members of the county board by vote declared themselves in favor of specific fixing and regulation of those fees, it is the duty of the courts to give effect to such decision, for therein spoke the legislative power of the state. All reasonable liberality must be accorded the minor deliberative bodies of the state; notably county boards, town meetings, school-district meetings, and the like, where, by reason of the character and vocation of the men comprising such bodies, the technicalities of procedure are not strictly enforced, nor perhaps fully understood. We must not expect nor demand that the records of such meetings should be made up with the accuracy and technicality of those of monetary corporations, conducted under the direction of skilled counsel; nor, indeed, of the legislature itself. *State ex rel. Bruce v. Davidson,* 32 Wis. 114; *State ex rel. Rochester v. Sup'rs of Racine Co.* 70 Wis. 543, 553; *Ryan v. Outagamie Co.* 80 Wis. 336. It is generally considered in deliberative assemblies that the adoption of a report of a committee containing recommendations constitutes a sufficient declaration of the body itself in favor of those recommendations. Thus Mr. Spofford declares: " When the report of a committee is adopted or agreed to, it becomes thereby the act of the assembly." Spofford, Manual Parl. Rules, 57. And Mr. Haines: " After a report is adopted, the recommendation of the committee becomes the sense of the assembly." Haines, Parl. Law, 145. Mr. Waples, in discussing the effect of action upon a committee report, says: " When a committee is appointed to devise some plan, and reports a plan, the assembly may adopt the report, or, more accurately, adopt the plan, by a motion to that effect." Waples, Handbook on Parl. Law, 79. Thus the motion, shown by the record in this case, that the report of the

committee be adopted, is certainly open to the construction
that by voting in favor of it the members of the county board
declared their will that the resolution forming a part of
that report should thereby be and become the resolution of
the board itself.    That such was the understanding in fact
of the members of that board is evinced by their action
upon appellant's bill about one month later.    They then
acted upon the assumption that they had adopted the reso-
lution embodied in the report of the committee.    Again,
among the significant facts worthy of consideration in as-
certaining the intention of the board, it may be noted that
this meeting was called primarily and especially to meet
and cope with the so-called "tramp problem," and that, un-
less the adoption of the motion in question was intended to
be effective as the adoption of some plan or remedy, that
meeting accomplished nothing and failed of its main pur-
pose; and that, too, in face of a situation calling for radical
and prompt action, as is at least suggested by the plaintiff's
bill in this case, from which it is apparent that the daily
burden of support of tramps under form of punishment and
accompanied by the expense of trial was becoming griev-
ous, for before this single judicial officer of the county the
disposal of large numbers of tramp cases daily appears; in
some instances exceeding twenty in a single day.    From all
these considerations we cannot seriously doubt that the
county board evinced, by the vote upon the motion to adopt
the committee's report, their determination to limit fees in
tramp cases according to the resolution recommended, and
made it the resolution of the board; so that it is binding
unless unreasonable,— a subject to be next considered.

3. Appellant assigns error for that the court excluded the
opinion of a witness — the plaintiff — as to the reasonable
value of his services, the offer being to prove that the costs
taxed under the general fee statute did not exceed the rea-
sonable value of the services in each case.    There can be no

doubt that local and municipal boards and bodies must exercise reasonably the legislative police powers delegated to them, nor that courts will more readily review their action than that of the state legislature. *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331. Nevertheless, the very fact of delegation of legislative power to regulate carries an implication that there is a considerable field for legislative discretion within which the depository is not subject to judicial review. Only when the just bounds of that field are clearly exceeded will courts deny validity to the legislation. *Comm. v. Robertson,* 5 Cush. 438, 442; *La Pointe v. O'Malley,* 47 Wis. 332, 337. In hardly any field can legislative discretion be broader than in fixing the fee to be ascribed to any specific service when rendered by a public officer compensated wholly by fees. The ultimate question is the reasonable compensation to the officer for the whole of his official services. This being ascertained, it matters little from what specific services it arises. Thus the legislature might well permit very inadequate fees for the performance of the judicial function as between private litigants, and so provide that the bulk of the official income would be derived from the public, or the reverse. Indeed, it has many times been held competent to impose duties for which specifically no fee at all is allowed. Many considerations of public policy may well intervene, even to the extent of discouraging undue activity in the exercise of certain powers. Many other suggestions might be made, all tending to the view that the reasonableness of a fee for any particular service is a question of such complexity, and controlled by facts so remote from each other and yet so involved, as to make any particular fact provable by evidence of so slight significance as to be hardly material. In the instant case it is difficult to see how the opinion of a witness as to the reasonable value of a certain service, commercially considered, could have any direct relevancy as to the reasonableness of a fee allowed

for that service, among a multitude of others with variant
fees affixed. It might well be the part of wisdom to allow
less or more than the reasonable commercial value, in the
light of the numerous other considerations properly in mind
of the legislative body or of a court. If, however, the testi-
mony offered may have had some slight relevancy to the
question before the court, so that it might properly have
been admitted, we are satisfied that it could not have
changed the result. Reasonableness of an ordinance is a
question of law for the court when all the material facts are
undisputed. *Clason v. Milwaukee,* 30 Wis. 316, 321; *Stafford
v. Chippewa Valley E. R. Co.* 110 Wis. 331. We are satisfied
that enough facts were either apparent in this case without
dispute, or were within judicial or common knowledge, to
warrant the conclusion that the action of the county board
was not unreasonable, even if it had appeared that the value
of such services as plaintiff detailed in these cases was as
much as he charged for them, or even more. Many of these
facts and circumstances have been suggested above. In ad-
dition thereto, however, was the fact, made apparent by
appellant's own bill, that these tramp cases differed from
the ordinary run of business, in that they could be disposed
of *en masse* and at wholesale. Single days witnessed four-
teen, twenty, and even twenty-four tramp cases, exclusive
of all other civil or criminal business; thus showing a claim
by plaintiff of nearly $28, $40, or $48 per day to be paid out
of one class of business alone. It cannot be unreasonable
to spare the public treasury some part of this excessive share
of plaintiff's total compensation.

Another consideration rendering the opinion of witnesses
as to value of plaintiff's services unimportant is that the
subject is within the official cognizance of the circuit courts
and of this court. The duties of such magistrates are fixed
by law, as also is the general method and rate of compensa-
tion. Their conduct is by law placed under the supervision

of the circuit courts and of the supreme court, which must, therefore, take judicial notice thereof so far as necessary to the exercise of that supervision. These circumstances place questions of compensation to the magistrates within many of the views as to compensation of attorneys, referees, guardians, and others whose services are performed under supervision of the courts, which have been recently expressed in several cases. *Ford v. Ford*, 88 Wis. 122; *Union Nat. Bank v. Mills*, 103 Wis. 39; *Remington v. Eastern R. Co.* 109 Wis. 154, 162; *Richardson v. Tyson*, 110 Wis. 572. The opinion of the plaintiff, which was rejected, could hardly have enlarged the knowledge which the circuit court had even on the particular subject of the opinion.

In view of the various considerations stated and suggested, we have no hesitation in approving the conclusion of the trial court that the action of the county board was not unreasonable, nor in holding that no error material to that conclusion or prejudicial to appellant was committed in ruling out the excluded evidence.

*By the Court.*— The judgment appealed from is modified by increasing the damages therein awarded to $591.65, and the total judgment to $628.83, as of its original date. As so modified, the judgment is affirmed. Appellant will recover costs of this appeal.