STATE, Respondent, v. CONSOLIDATED FREIGHTWAYS CORPORATION, Appellant.

*No. 75–49. Argued May 4, 1976.—Decided June 2, 1976.*
(Also reported in 242 N. W. 2d 192.)

For the appellant there were briefs by *John P. Varda, John D. Varda,* attorneys, and *DeWitt, McAndrews & Porter, S. C.* of counsel, and oral argument by *Michael Varda,* all of Madison.

For the respondent the cause was argued by *Albert Harriman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J. Consolidated was issued three citations alleging that certain of its vehicles exceeded the weight limitations prescribed by sec. 348.15, Stats. Trial was held on the first citation. It was stipulated by the parties that the decision reached as to that citation would be determinative of the decision as to all three charges.

The citation alleged that Consolidated violated sec. 348.15 (3) (b), Stats.:

"(3) For enforcement purposes only and in recognition of the possibility of increased weight on a particular wheel or axle or group of axles due to practical operating problems, including but not limited to accumulation of

snow, ice, mud or dirt, the use of tire chains or minor shifting of load, no summons or complaint shall be issued, served or enforced under sub. (2) unless:

"...

"(b) The gross weight imposed on the highway by the wheels of any one axle exceeds 19,500 pounds; or

"1. The gross weight imposed on the highway by the wheels of any one axle exceeds 21,000 pounds in the case of a 2-axle motor truck transporting exclusively milk from the point of production to the primary market and the return of dairy supplies and dairy products from such primary market to the farm when operated on highways not a part of the national system of interstate and defense highways.

"2. The gross weight imposed on the highway by the wheels of any one axle exceeds 21,500 pounds or, for 2 axles less than seven feet apart, 35,000 pounds or, for groups of 3 or more consecutive axles more than 9 feet apart, a weight of 4,000 pounds more than is shown in par. (c) or permitted under par. (d) when transporting peeled or unpeeled forest products cut crosswise. This section shall not apply to the national system of interstate and defense highways."

The truck in question was not transporting milk, dairy products, or peeled or unpeeled forest products cut crosswise.

Sections 348.15 (5) and 348.15 (5r), Stats., provide methods for ascertaining weight measurements:

"(5) For enforcement of weight limitations specified by this chapter the gross weight, measured in pounds, imposed on the highway by any wheel or any one axle or by any group of 2 or more axles shall be determined by weighing the vehicles and load, either by single draft or multiple draft weighing on scales in good working order which are tested periodically by the department of agriculture or other authorized testing agencies for accuracy to within standard accepted tolerances. *The weighing operation shall be performed in accordance with and under conditions accepted as good weighing technique and practice. In multiple draft weighing the sum of the weight of respective components shall be used to establish*

*the weight of a combination of the components.* It is recognized that the weight, determined in accordance with methods herein prescribed, includes all statutory tolerances and represents the momentary load force or reaction imposed on the scale at the time of weighing. Such tolerances include any variation due to (a) positioning or tilt of the vehicle on the scale platform and adjacent bearing surface; (b) momentary position of axle centers with respect to wheel bearings and vehicle body; (c) temporary distribution of loading on the wheel or axle; and (d) miscellaneous variable factors of spring flexure, shackle friction, clutch engagement, brake pressure, tire compression and other variable factors.

"  . . .

"(5r) Irrespective of sub. (5), in determining overweight under sub. (3) (b) 2 the results of weighing by means of portable scales shall be admissible as evidence, but the operator may request reweighing on a certified stationary scale. Portable scales shall be checked by weighing in comparison to certified stationary scales within 10 days immediately prior to any weighing operation. In all cases where a vehicle is weighed on a certified stationary scale, axles less than 6 feet apart shall be weighed as one unit." (Emphasis added.)

Section 348.15 (3) (b) 2, Stats., prescribes regulations for the transportation of certain forest products.

The cited vehicle was weighed on a state scale, by a state department of transportation inspector. The parties stipulated that the scale was accurate in its measurement. The measurement was obtained in the following manner. The steering axle, number one, was weighed first. Axles number two and three were weighed together. It was stipulated that the distance between these two axles was less than six feet. The total weight of the two axles was found to be 31,460 pounds. Axle number three was weighed by itself and the weight obtained was 7,760 pounds. This weight was subtracted from the combined weight of axles number two and three. In this manner, the weight of axle number two was determined

to be 23,700 pounds. Axle number two was not weighed by itself. The inspecting officer testified as to why it was impossible to do so.

"*A.* As the vehicle comes on the scale, you have your steering axle first, and our platform is 24 by 12, there would be no way possible to weigh axle 2 by itself. If he took 3 off and had 2 on the scale, the steering axle, axle 1, would still be on the scale. There would be no way to get axle 1 off the scale."

This undisputed testimony is to the effect that because of the location of axles one, two and three, it is physically impossible to weigh axle two alone on an existing state certified stationary scale.

The weight of axle number two exceeded the statutory maximum allowed by 4,200 pounds. Therefore, the citation alleging a statutory violation was issued to Consolidated by the state inspector.

The trial court found that the weighing method utilized to measure the load complied with the requirements of sec. 348.15 (5), Stats. It further found that sec. 348.15 (5r) in its entirety applied only to weighing procedures under sec. 348.15 (3) (b) 2, relating to transportation of peeled or unpeeled forest products cut crosswise. Thus, it was determined the statutory provisions of sub. (3) (b) 2 for weighing axles two and three (the axles less than six feet apart) as one unit was not applicable. Therefore, Consolidated was found guilty of the charges as alleged in the three citations.

This appeal presents two issues for resolution:

1. Did the trial court commit error in its conclusion that the weighing method utilized complied with the requirements of sec. 348.15 (5), Stats.?

2. Did the trial court commit error in its conclusion that sec. 348.15 (5r), Stats., in its entirety applies only to determinations of overweight under sec. 348.15

(3) (b) 2, relating to transportation of peeled or unpeeled forest products cut crosswise?

## Weighing Procedure.

Section 348.15, Stats., places limitations upon the weight which a vehicle or its various components may impose upon class "A" highways. Its purpose was recognized in *State v. Dried Milk Products Co-operative* (1962), 16 Wis. 2d 357, 362, 114 N. W. 2d 412:

". . . The statutes here involved are designed to prevent illegal overloading which causes premature deterioration of public highways. Under its police power, the state may subject the use of highways to reasonable regulations and the weight restrictions. . . ."

*See also:* 60 C. J. S., *Motor Vehicles,* p. 237, sec. 32; 7 Am. Jur. 2d, *Automobiles and Highway Traffic,* pp. 715, 716, sec. 160; Annot. 75 A. L. R. 2d 376. Sec. 348.21 (3), provides a forfeiture penalty for the violation of sec. 348.15.

Section 348.15 (5), Stats., was enacted by ch. 603, Laws of 1957, and has remained unchanged since its enactment. The sentences of the statute pertinent to the issue under discussion provide that: ". . . The weighing operation shall be performed in accordance with and under conditions accepted as good weighing technique and practice. In multiple draft weighing the sum of the weight of respective components shall be used to establish the weight of a combination of the components. . . ."

Consolidated argues that the method used for determining that axle number two exceeded the maximum limitation does not comport with standards accepted as good weighing technique. In support of its position, it presented to the trial court copies of certain pages from a publication of the United States Department of Com-

merce, Bureau of Standards entitled National Bureau of Standards Handbook 44—4th Edition 1971, *Specifications, Tolerances, and Other Technical Requirements for Commercial Weighing and Measuring Devices.* That publication contains a paragraph indicating that single draft weighing of vehicles is preferred to multiple draft weighing. Consolidated submits that it cannot be convicted of an overload violation when that overload was measured by weighing two axles together and then subtracting the weight of one from the combined total.

The trial court noted that regardless of the handbook standards, the statute specifically permits multiple draft weighing, as well as use of the sum of the weight of various components to determine the weight of a combination of components, sec. 348.15 (5), Stats., *supra.* It, therefore, concluded that the converse was also permitted in that subtraction of the weight of one component from a combined weight is allowed in order to measure the weight of the second component. The circuit court affirmed this conclusion. We find no error in this determination.

In *State v. Trailer Service, Inc.* (1973), 61 Wis. 2d 400, 212 N. W. 2d 683, this court was presented with the question of what constitutes good weighing procedure. The weight imposed by all of the axles of the vehicle had been obtained by first weighing the six wheels on the right side, then weighing the six wheels on the left side, and adding the results. This court concluded that the term "components" is not limited to individual axles:

". . . In multiple draft weighing, as was used here, the sum of the weight of the respective components must be used to establish the weight of the combination of the components. Sec. 348.15 (5). This section recognizes that weight determined by multiple weighing represents the momentary load force or reaction imposed on the scale at the time of weighing. We do not read 'components' in this section to mean an axle as a unit must be weighed

separately. Components include wheels and the combined weights of the 12 wheels on the trailer gave the gross weight of its three axles, which added to the axles' weight of the tractor, gave the gross weight imposed on the highway by the axles of the tractor-trailer. The trial court made no error in its finding that the procedure of weighing followed the statute." *State v. Trailer Service, Inc., supra,* pages 406, 407.

Thus, it is established that individual axles do not have to be weighed separately. Moreover, by statute, the weight of any individual "component" may be added to the weight of others to establish the weight of a combination of components, sec. 348.15 (5), Stats.; *State v. Trailer Service, Inc., supra,* p. 407.

Nevertheless, Consolidated contends that while addition may be used to establish combined weight of components, subtraction may not be used to establish the weight of an individual component. However, the statute merely prescribes that good weighing technique and practice be utilized. No other limitation is imposed. It specifically authorizes multiple draft weighing as well as addition of the weight of components to obtain combined weights. Subtraction of weights of the various components, one from the other, is the inverse of addition. Considering the intent of these statutory provisions, the procedure used by the state inspector is a reasonable application of the statute. There is no contention that the method used resulted in inaccuracies in measurement, *State v. Trailer Service, Inc., supra,* p. 406. Furthermore, it was impossible to weigh axle number two by itself.[1] As the trial court noted:

". . . This is an exact science and to say it is permissible to add two and two and get four but not permissible to subtract two from four to get two is just not logical."

[1] *See: People v. Fair* (1965), 61 Ill. App. 2d 360, 210 N. E. 2d 593, 596.

Consolidated argues that since the statute exacts a penalty for its violation, it must be construed strictly and this issue resolved against the state. This argument was addressed by the Virginia Supreme Court of Appeals, *Tiller v. Commonwealth* (1952), 193 Va. 418, 69 S. E. 2d 441, 444:

"The rule that a penal statute must be strictly construed does not prevent consideration by the courts of the general purpose and design of the legislature. Donnelly v. United States, 276 U. S. 505, 48 S. Ct. 400, 72 L. Ed. 676. We have already noted that the statute herein involved relates to the public safety and to this extent it may be construed as remedial as well as penal and it is the judicial function to search for and follow the true legislative intent and adopt that sense of the words used which will attain the results anticipated by the legislature, being careful, however, not to enlarge by implication the obvious effect of the statute. Illinois C. R. Co. v. Hudson, 136 Tenn. 1, 188 S. W. 589, 2 A. L. R. 147."

As this court stated in *Milwaukee Protestant Home v. Milwaukee* (1969), 41 Wis. 2d 284, 301, 164 N. W. 2d 289, even strict construction must be a reasonable interpretation of the language used.

The method of weight measurement utilized did not contravene the provisions of sec. 348.15 (5), Stats.

Applicability of Sec. 348.15 (5r), Stats.

Consolidated takes the position that the third sentence of sec. 348.15 (5r), Stats., *supra*, applies to its vehicle. That sentence reads: ". . . In all cases where a vehicle is weighed on a certified stationary scale, axles less than 6 feet apart shall be weighed as one unit." It is stipulated that axles number two and three of the vehicle in question were less than six feet apart. Consolidated urges that the two axles should have been weighed as a single unit and any overload computed on that basis. The trial court concluded that the third sentence of sub. (5r) ap-

plied only to determinations of overweight under sec. 348.15 (3) (b) 2, as do the first two sentences of the subsection. Therefore, the statutory provision for weighing axles as a unit was applicable only to the transportation of certain therein-identified forest products. We agree with the decision of the circuit court which affirmed the judgment of the trial court.

It has been often stated by this court that the primary source for construction of a statute is the language of the statute itself. *Omernik v. State* (1974), 64 Wis. 2d 6, 12, 218 N. W. 2d 734. The third sentence of sec. 348.15 (5r), Stats., is not set off from the rest of the provision in any way. The subsection begins by providing an exception to sub. (5) and indicates that the exception is to apply to determinations of overweight under sub. (3) (b) 2, which relates only to vehicles transporting peeled or unpeeled forest products cut crosswise. Thus, the subject matter of the subsection and its application have been strictly limited.

Sec. 348.15 (3) (b) 2 and (5r), Stats., were created by ch. 340, Laws of 1969. The preamble to ch. 340 states that it was an act to amend specific sections of the statutes "and to create 348.15 (3) (b) 2 and (5r) of the statutes, relating to transportation of forest products." Therefore, for this court to hold that the last sentence of sec. 348.15 (5r) was applicable to the Consolidated vehicle would be in direct conflict with the expressed legislative intent.

The position of a statutory subsection is also of significance in construing a statute. *Dept. of Natural Resources v. Clintonville* (1971), 53 Wis. 2d 1, 10, 191 N. W. 2d 866. The sentence in question is located in a subsection providing an exception to sub. (5). This position leads us to the conclusion that it was intended to apply in conformity with the terms of that subsection. Had it been intended as an addition to the procedure prescribed by sub. (5), it is only reasonable to assume

that it would have been positioned with that subsection, rather than with sub. (5r). If Consolidated's position were to be sustained, it would result in a situation where single axle overloads could never be ascertained for any vehicle, where the axles were less than six feet apart and were being weighed on a certified stationary scale. In the instant case, the Consolidated vehicle would be exempt from the statutorily imposed single axle weight limitations. Repeal of a statute by implication is not favored, *State v. Dairyland Power Cooperative* (1971), 52 Wis. 2d 45, 51, 187 N. W. 2d 878.

Consolidated states that it was the intent of the drafter of the third sentence that it have general applicability. However, neither a legislator, nor a private citizen, is permitted to testify as to what the intent of the legislature was in the passage of a particular statute. *Wisconsin Southern Gas Co. v. Public Serv. Comm.* (1973), 57 Wis. 2d 643, 652, 205 N. W. 2d 403.

Finally, Consolidated argues that its construction should be accepted because limitation of the provision in question to vehicles transporting peeled or unpeeled forest products cut crosswise may call the constitutionality of the section into question in that it could deny equal protection to transporters of other types of loads.

This court on several occasions has sustained the provisions relating to truck weight limitations against constitutional attack, *State v. Dried Milk Products Co-operative, supra,* p. 362; *State v. Naczas* (1959), 8 Wis. 2d 187, 98 N. W. 2d 444; *State v. Wetzel* (1932), 208 Wis. 603, 243 N. W. 768. Exemptions based upon proper classifications have been upheld. *State v. Seraphine* (1954), 266 Wis. 118, 123, 124, 62 N. W. 2d 403.

Legislative classifications are presumed valid. The basic test in reviewing a challenged classification "is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify

the classification," *Omernik v. State, supra,* pp. 18, 19. Contentions that classifications within weight limitation statutes are discriminatory when based upon the type of commodity being transported have been generally rejected, Annot. 75 A. L. R. 2d 376, *supra;* 7 Am. Jur. 2d, *supra,* p. 716.

Several courts have upheld classifications conferring special benefits in terms of weight limitations upon vehicles hauling forest products. The benefits have been found reasonable as a valid exercise of the police power, *Alexander v. State* (1971), 228 Ga. 179, 184 S. E. 2d 450, 452, or as a means of fostering an important state industry, *State v. Pyle* (1961), 226 Or. 485, 360 Pac. 2d 626, 629. *See also: State v. John P. Nutt Co.* (1935), 180 S. C. 19, 185 S. E. 25. In the *Pyle Case,* several justifications were advanced for the special treatment afforded to those hauling forest products. These included the difficulty in transporting the products, in estimating the distribution of load, and the circumstances under which such products are loaded. Such considerations are applicable equally to the classification challenged herein. The classification rests on a reasonable basis. The courts below committed no error in determining that sec. 348.15 (5r), Stats., in its entirety was applicable only to determinations of overweight under sec. 348.15 (3) (b) 2.

*By the Court.*—Order affirmed.