**LA CROSSE COUNTY,**
**Plaintiff–Appellee,**

**v.**

**GERSHMAN, BRICKNER & BRATTON, INC., Black & Veatch, a Partnership, and Jack Robinson, managing partner of Black & Veatch, Defendants–Appellants.**

**Nos. 92–1184, 92–1185.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1992.

Decided Jan. 7, 1993.

---

**1.** Circuit Judge Michael S. Kanne did not participate in consideration of the suggestion for re-

hearing *en banc.*

George P. Kersten (argued), Bruce J. Landgraf, Arlo McKinnon, Kersten & McKinnon, Milwaukee, WI, for plaintiff-appellee.

Charles D. Clausen (argued), David S. Branch, Laura E. Campbell, Friebert, Finerty & St. John, Milwaukee, WI, for defendants-appellants Black & Veatch and Jack W. Robinson, II.

Mary J. Polson, Kim Grimmer, Ross & Stevens, Madison, WI, for defendant-appellant Gershman, Brickner & Bratton, Inc.

Before CUDAHY and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUDAHY, Circuit Judge.

La Crosse County, Wisconsin (the County) found itself in the seemingly enviable position of having insufficient quantities of solid waste, a.k.a. garbage. This apparent good fortune, however, wreaked havoc with the County's environmentally sensitive waste disposal system, the efficient operation of which required a quantity of solid waste exceeding that generated within the County. Believing that its garbage problems were the result of poor advice it had received from its consultants, the County filed suit against the appellants alleging professional negligence. The suit, originally filed in Wisconsin state court, was removed to the United States District Court for the Western District of Wisconsin. Jurisdiction was properly predicated upon diversity of citizenship between the parties. The jury returned a verdict finding all parties negligent, but apportioned most of the fault to the defendants. Judgment was entered against the appellants in the amount of $2,593,360. This appeal followed, and we now affirm.

I.

During the 1970s, La Crosse County disposed of its solid waste in a county-owned landfill. Beginning in 1981, the County periodically reviewed its solid waste disposal system to ensure that it was capable of meeting future needs. In 1983, the County retained defendant Black & Veatch to conduct a feasibility study comparing the costs of various resource recovery disposal systems to traditional landfilling.[1] The results of the study showed that a mass burn[2] (resource recovery) system was the most economical solid waste disposal system for the County as long as the County could provide at least 200 tons of solid waste per day, the amount Black & Veatch estimated would be available. With this information in hand, the County authorized Black & Veatch to solicit proposals for the construction of a mass burn facility. Black & Veatch prepared a "request for proposals" (RFP) that was sent to qualified firms expressing an interest in developing the County's new waste disposal facilities. The RFP represented that the County would guarantee delivery of at least 200 tons of "processable"[3] solid waste per day once the new facility was operational.

The County eventually contracted with Northern States Power Company (NSP) to build and operate a solid waste disposal system for the County.[4] The contract obligated the County to provide 73,000 tons of acceptable solid waste each year, a figure derived from appellants' estimate of the amount of La Crosse County solid waste. From the very beginning, deliveries of acceptable, processable solid waste to the disposal facility fell below guaranteed levels. Consequently, the unit cost of operating the disposal system increased dramatically above estimates.[5] The County's suit

1. A resource recovery system is one that converts solid waste into fuel or energy. *See* WIS. STAT.ANN. § 159.01(8m) (West 1992).

2. A "mass burn" system incinerates solid waste to produce steam.

3. Processable solid waste is that portion of all solid waste that can be utilized in a resource recovery disposal system.

4. During the procurement phase of the project the County realized that it might have a conflict

of interest with Black & Veatch. As a result, the County retained Gershman, Brickner & Bratton, Inc. (GBB) to complete the project. GBB simply adopted Black & Veatch's estimate of the amount of solid waste generated in the County; hence, the County's allegations of professional negligence apply with equal force to both appellants.

5. The contract between the County and NSP provided that the County would guarantee deliv-

against appellants alleged that they negligently overestimated the amount of processable solid waste available in the County. They were thus allegedly negligent in failing to advise the County that continued landfilling was less expensive than a resource recovery-based disposal system.

## II.

### A. *Admissibility of County Supervisors' Testimony*

Whether appellants are liable for negligence depends in part on the County's purpose in pursuing an alternate disposal system. It is clear that the County sought to deal with its waste disposal requirements in a manner consistent with environmental protection. The County contends, however, and the jury apparently agreed, that its environmental concerns were tempered by its desire to reduce overall disposal costs. To this end, the district court permitted several members of the County's board of supervisors to testify about their motivations in voting for the resolution authorizing the contract with NSP.[6] The parties agree that Wisconsin law applies. Appellants mount a two-pronged attack on the admissibility of this testimony, and we consider each argument separately.

■■ Appellants maintain that Wisconsin law prohibits the admission of parol evidence that impeaches or contradicts the records of the proceedings of public bodies. *See Grimm v. Bayfield County,* 174 Wis.

43, 182 N.W. 466, 467 (1921); *Bartlett v. Eau Claire County,* 112 Wis. 237, 88 N.W. 61, 62 (1901). We agree, but nevertheless find no error based on this principle. The district court ruled that members of the county board could testify "except to the extent that their testimony tends to contradict the language of the resolution." *La Crosse County v. Gershman, Brickner & Bratton, Inc.,* No. 90–C–131–C (W.D.Wis. July 19, 1991) (order denying motion *in limine*). The admitted testimony was consistent with this order. The supervisors were not allowed to testify that, although the resolution says "X," it really meant "Y." Rather, they were allowed to explain why they voted the way they did. The supervisors' testimony that they pursued an alternate disposal system because of the appellants' assurances that it was the least expensive choice did not contradict the language of the resolution "at a reasonable cost." This testimony did not impeach the written record but merely supplemented it.

■ Appellants, however, make the related argument that a court may not inquire into the motivations of individual legislators in enacting legislation. The rule in Wisconsin is that a court may not rely upon the testimony of members of a legislative body for the purpose of determining what that body intended when it enacted a particular piece of legislation.[7] *Labor and Farm Party v. Elections Bd.,* 117 Wis.2d

---

ery of 73,000 tons of processable solid waste and would pay NSP an annual processing fee for that volume whether or not it was delivered. Additionally, if the County failed to deliver the guaranteed amount of waste, it was subject to penalties and the loss of certain credits under the contract.

6. The opening clause of this resolution states:
   WHEREAS, La Crosse County wishes to have a system of disposal of solid waste that will reduce the volume of such waste which must be landfilled and that will be environmentally acceptable and at a reasonable cost....
   Exh. 94. At trial, the district court permitted several board members to testify that they voted in favor of this resolution only because the appellants had assured them that a resource recovery system would be cheaper than landfilling in the long run. Tr. 2–73, 2–219, 2–222, 2–252, 2–269 to 2–270, 3–13 to 3–16, 3–206, 3–210, 3–212, 3–218.

7. Judge Fairchild doubts the applicability of this rule, because this is not a case "where rights or duties will be governed by the meaning of a statute, order, or resolution...." *Post* at 1177. We are not inclined to follow this interpretation. Although the rule often is applied to prevent members of the Wisconsin Legislature from offering their own interpretation of statutes, it applies with equal force to other legislative acts. Moreover, the parties' contractual rights and obligations here are closely tied to the interpretation given the resolution. Individual county board members are as incapable of testifying to the entire body's intent in enacting a piece of legislation as are their state legislative counterparts, and application of the rule barring their testimony in this case seems to be a natural extension of Wisconsin law consistent with our role under *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny.

351, 344 N.W.2d 177, 180 (1984); *State of Wisconsin v. Consolidated Freightways Corp.*, 72 Wis.2d 727, 242 N.W.2d 192, 198 (1976). The district court properly reasoned that this rule is predicated upon the theory that no individual legislator can explain the votes of the entire body. The court concluded that there was a difference between an individual's testifying in explanation of his or her own motive for voting in a particular way and the same person's explanation of why a piece of legislation was enacted. *La Crosse County v. Gershman, Brickner & Bratton, Inc.*, No. 90–C–131–C (W.D.Wis. Dec. 24, 1991) (order denying postjudgment motions). Although the dichotomy between these types of testimony may be legally cognizable, we believe that in this case it was a distinction without a difference. The jury could have easily interpreted the cumulative testimony of six present or former supervisors—purporting to state individual motives for supporting the resolution—as explanations of the entire body's intent. Indeed, certain supervisors clearly claimed to be presenting the board's collective understanding, despite questioning designed to elicit their individual motivations. *See, e.g.,* Tr. 2–219 to 2–222 (Supervisor Dawson) ("Q: What was *your* basis for determining that this could be done at reasonable cost as a result of which you entered into this resolution or sponsored this resolution? A: *Our* position was that it would lengthen the life of our landfill, and the tipping fee would cover our expense.") (emphasis added). This sort of testimony is impermissible under Wisconsin law, and its admission was error.

■ Nevertheless, we think that the error was harmless. Fed.R.Civ.P. 61. The supervisors' testimony was introduced to prove that the County pursued an alternative disposal system in reliance upon the defendants' advice that such a system would be less expensive in the long run. Although proof of this sort was needed to support the County's theory of liability, there was substantial evidence, other than the challenged testimony, from which the jury could have inferred such reliance. For example, the record contained the official minutes of numerous meetings of the County Board and its committees, at which various County officials opined that Black & Veatch's studies showed a link between a resource recovery disposal system and lower overall costs. *E.g.,* Exh. 15, p. 9; Exhs. 76, 93. The feasibility study Black & Veatch prepared was itself primarily a cost-benefit comparison of the various disposal systems. Exh. 14. This evidence would permit a jury to infer that the County relied upon the appellants' recommendations in selecting a waste disposal system that it believed to be the least expensive choice (in terms of accounting costs) in the long run. Whether this reliance was reasonable was, of course, a question for the jury. But, ignoring the erroneously admitted testimony, there was more than sufficient evidence to support the verdict; consequently, the trial achieved substantial justice notwithstanding the district court's error.

## B. *Proof of Damages*

■ The appellants make a multi-faceted attack on the evidence introduced to establish damages. The appellants first contend that the County lacked standing to sue as *parens patriae* on behalf of its taxpayers and citizens. We need not reach the merits of this contention, since the district court ruled, and we agree, that the County had the authority to sue in its own capacity as purchaser of the services. Tr. of Pretrial, p. 9; Wis.Stat.Ann. § 59.01 (West 1992). Appellants next contend that the County was not legally damaged because any additional waste disposal costs could be "passed on" to the disposal system users. The fact that costs may be passed on is, in general, not a defense to a claim by an injured purchaser.

In this connection, the County bears directly the costs of operating the waste disposal system. Thus, any increase in that cost attributable to the appellants' negligence is actionable by the County under ordinary tort law. The County is the "direct purchaser," and the fact that it can distribute excess costs to waste system users is no bar to recovery. *See Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 208–09, 110 S.Ct. 2807, 2812–13, 111 L.Ed.2d 169 (1990). Indeed, to allow a passing-on

defense would presumably make a supplier's negligence actionable only by the ultimate consumer—here the generator of solid waste. In that event, these indirect purchasers would, to pursue recovery, face the daunting task of apportioning damages. And the costs of suit for most ultimate users might exceed the potential recovery. These considerations, developed mainly in the context of antitrust cases, would in matters like the one before us undermine the deterrent impact of negligence actions. As noted, the Supreme Court has rejected the passing-on defense with respect to antitrust claims. *Id.* at 208–16, 110 S.Ct. at 2812–17. We see no reason why similar principles should not govern Wisconsin's law of professional negligence.[8]

■ Finally, the appellants argue that, even if the resource recovery-based disposal system did result in increased unit costs, the County was not damaged because for every dollar of increased disposal cost the County received a proportional increase in environmental benefit. The County has not questioned the original basis of this argument: in retaining the appellants to assist it in developing a disposal system, the County was motivated by a desire to further environmental objectives *as well* as by the desire to reduce overall costs. The district court also recognized these dual goals and instructed the jury to offset the value of any environmental benefits the County received against any damage resulting from excess costs.[9] The fact that the jury returned an award drastically less than that requested by the County suggests that it heeded this instruction.

At oral argument, the appellants' counsel maintained that they were forced at trial to "fend off" the County's calculation of damages. But this suggests that the trial reflected a typical negligence suit, in which the plaintiff presents one measure of damages and the defendant responds with another. The verdict thus suggests that the appellants enjoyed some success with the jury. Although their position was not swallowed whole, there is no basis for a second kick at the cat.

## C. *Proximate Causation*

■ The appellants ask this court, as they did the district court, to hold, as a matter of law, that public policy precludes liability in this case. Because this point is little more than a repetition of the appellants' other arguments, we decline to discuss it at length. We do note, however, that the County's injury was not especially remote from the claimed negligence nor will the allowance of recovery in this case necessarily open the way for fraudulent claims in the future. *See Rolph v. EBI Companies,* 159 Wis.2d 518, 464 N.W.2d 667, 673 (1991). The damage to the County flows directly from the appellants' negligence. If the appellants had correctly estimated the amount of solid waste generated within the County, the chain of events leading up to the County's adoption of its present oversized waste disposal system would presumably not have occurred. Moreover, contrary to the appellants' assertion, governmental entities may not, under our holding today, succeed in claims of professional negligence merely through the after-the-fact testimony of individual legislators

---

8. Appellants' collateral source argument fails for similar reasons. Any portion of the additional costs of operating the disposal system that the County is able to pass on to system users is analogous to "reimbursement by an *independent source for damages caused by [the* appellants]." *Town of East Troy v. Soo Line R.R. Co.,* 653 F.2d 1123, 1132 (7th Cir.1980). Under Wisconsin law, amounts received from such collateral sources do not reduce a plaintiff's damage award, even if the plaintiff is thus allowed to effectively recover twice. *Id.*

9. Appellants note that the County's disposal system advances the policy of the State of Wisconsin to encourage resource recovery disposal. Wis.Stat.Ann. § 159.05(1) (West 1992). We do not believe, however, that the County was in any way obligated to pursue an alternate disposal system and was thus entitled to weigh the monetary costs of such a system against any resulting environmental benefits. Because the County convinced the jury that its decision to pursue a resource recovery system was based upon the appellants' negligent advice that the recommended system was the cheapest overall, the County was entitled to recover any damages flowing from such reliance.

about their purposes. Such *post hoc* explanations may not be probative of legislative intent, and, may indeed be susceptible of fraud. Here, however, there is sufficient admissible evidence of negligence and of reasonable reliance. There is no offense to public policy.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.[10]

FAIRCHILD, Senior Circuit Judge, concurring.

I agree that if it was error under Wisconsin law to admit the county board members' testimony, the error was harmless. I want to point out, however, that it may not have been error. Our case can be distinguished from the Wisconsin cases announcing the rules which might proscribe such testimony.

Where a county sues persons who negligently advised it and seeks to recover loss suffered under a contract entered into by reason of the faulty advice, the Wisconsin courts might well permit the county to prove by the testimony of county board members the significance of the defendants' mistake in causing the board to authorize the contract. The Wisconsin cases of which I am aware do not deal with that situation.

One rule stated in Wisconsin cases is that evidence *aliunde* the official record is not admissible where the effect thereof will be to vary or contradict the record, but may otherwise be received for the purpose of showing occurrences which, through oversight or some other cause, were not recorded. *Chippewa Bridge Co. v. Durand,* 122 Wis. 85, 103, 99 N.W. 603 (1904); *Grimm v. Bayfield County,* 174 Wis. 43, 46, 182 N.W. 466, 467 (1921); *Bartlett v. Eau Claire County,* 112 Wis. 237, 242, 88 N.W. 61, 62 (1901). *Chippewa Bridge* rejected evidence showing, contrary to the record, the date of an adjournment, *Grimm* permitted evidence of the adoption of a motion where the record failed to show

that, and of the date of a meeting where the record showed on its face that there had been an error, and *Bartlett* rejected evidence that the resolution adopted was different from the one recorded.

The first "whereas" clause indicates that the board decided that the cost of the method being contracted for was reasonable. The members' testimony was that they believed this method would be cheaper than landfill over the long run. I agree that this testimony was not the kind of direct and frontal contradiction of the public record forbidden by the rule just discussed.

A second rule stated in Wisconsin cases is that a legislator cannot testify as to the intent of the legislature in passing a particular statute. *Labor & Farm Party v. Elections Board,* 117 Wis.2d 351, 356, 344 N.W.2d 177 (1984); *State v. Consolidated Freightways Corp.,* 72 Wis.2d 727, 738, 242 N.W.2d 192, 198 (1976); *Wisconsin Southern Gas Co., Inc. v. Public Service Comm.,* 51 Wis.2d 643, 652, 205 N.W.2d 403 (1973); *Cartwright v. Sharpe,* 40 Wis.2d 494, 508, 162 N.W.2d 5 (1968); *Northern Trust Co. v. Snyder,* 113 Wis. 516, 530, 89 N.W. 460 (1902). These are all cases where rights or duties will be governed by the meaning of a statute, order, or resolution, and testimony as to the intended meaning of the legislation was deemed inadmissible. Our case does not involve a similar question.

A third rule is that the validity and effect of legislative acts are not to be determined by the inducements or motive that led to their enactment. *Peterson v. Natural Resources Board,* 94 Wis.2d 587, 599, 288 N.W.2d 845 (1980); *Rosenberg v. Whitefish Bay,* 199 Wis. 214, 218, 225 N.W. 838 (1929); *Tilly v. Mitchell & Lewis Co.,* 121 Wis. 1, 10, 98 N.W. 969 (1904); *Ballenger v. Door County,* 131 Wis.2d 422, 432, 388 N.W.2d 624 (Ct.App.), *review denied* 130 Wis.2d 545, 391 N.W.2d 210 (1986). These cases involved a challenge to the validity of a rule or ordinance on the ground of improper motivation, an issue not present here. It has been pointed out that this rule cannot be all encompassing. *South Car-*

**10.** We also deny appellants' motion to strike.

*olina Educ. Ass'n v. Campbell,* 883 F.2d 1251, 1259 (4th Cir.1989) (there are limited exceptions to the principle that judicial inquiry into legislative motive is to be avoided, where motive is a substantive element of the test of constitutionality).

None of the cases cited involved the type of issue in the case before us. There is room to hold that Wisconsin courts would not apply any of these rules to the testimony in this case.