CARROLL D. BESADNY, Secretary Department of Natural Resources
You have requested my opinion on two questions related to the assessment of fees to cover the actual cost to the Department of Natural Resources, hereafter DNR, of evaluating a mining permit application. You ask what staff work should be covered by the application fee under section 144.85(2)(a), Stats., and Wis. Admin. Code § NR 132.06(3)(a). You also ask whether the withdrawal of a mining permit application prior to a final decision on the application affects the department's obligation to assess the mining permit fee. These questions arise from the mining permit application of Exxon Coal and Minerals Company that has recently been withdrawn by the company.
In answer to your first question, all staff time required to determine whether the applicant meets the requirements of the Metallic Mining Reclamation Act, hereafter MMRA, must be included in the mining permit application fee. The fact that such staff work may include a determination of compliance with nonmining permit, license or approval requirements related to the mining site does not exempt such work from the assessment.
My answer to your second question is that withdrawal of a mining permit application by the applicant prior to a final decision on the application by the DNR does not relieve the applicant of the obligation to pay the entire cost of evaluation.
Section 144.85(1)(a) provides that no person may engage in mining for metallic minerals without a mining permit covering the site. Under this section, a person desiring to mine must apply to the DNR for a mining permit. Section 144.85(2)(a) requires that: *Page 151 
 The application shall be accompanied by a fee established by the department, by rule, which shall cover the estimated cost of evaluating the mining permit application. After completing its evaluation, the department shall revise the fee to reflect the actual cost of evaluation. The fee may be revised for persons to reflect the payment of fees for the same services to meet other requirements.
Pursuant to this section, the DNR has promulgated a rule relating to the payment of fees. Wisconsin Administrative Code § NR 132.06(3)(a) provides:
 The application shall be accompanied by the following:
 (a) A fee of $10,000 to cover the estimated cost of evaluating the operator's mining permit application. Upon completion of its evaluation, the department shall adjust this fee to reflect the actual cost of evaluation less any fees paid for the same services to satisfy other requirements. Evaluation of a mining permit application shall be complete upon the issuance of an order to grant or deny a mining permit.
You have asked for clarification as to what staff work should be included in the cost of evaluating the operator's mining permit application. Specifically, you point out that, in order to construct and operate a mine, an applicant will also be required to obtain several additional departmental permits. In any particular mining operation, these permits would regulate activities affecting the surface water, groundwater and activities resulting in air pollution as well as the generation, treatment, storage and disposal of wastes. You ask if section 144.85(2)(a) requires that the cost of evaluating the nonmining permits be included in the mining permit application fee.
This raises a question of statutory interpretation, the purpose of which is to ascertain and give effect to the intent of the Legislature. DeMars v. LaPour, 123 Wis.2d 366, 370,366 N.W.2d 891 (1985). When interpreting a statute, the primary source of interpretation is the language of the statute itself. State v.Consolidated Freightways Corp., 72 Wis.2d 727, 737,242 N.W.2d 192 (1976). The threshold question to be addressed when construing a statute is whether the language used is ambiguous.State v. Engler, 80 Wis.2d 402, 406, 259 N.W.2d 97 (1977). As stated in Stoll v. Adriansen, 122 Wis.2d 503, 510,362 N.W.2d 182 (Ct.App. 1984), "if the statutory language *Page 152 
is plain and clearly understood, that meaning must be given to the statute." A statute is ambiguous if reasonable persons could disagree as to its meaning. The test for ambiguity is whether the statute is capable of being understood by reasonably well-informed persons in two or more different senses. State v.Derenne, 102 Wis.2d 38, 45, 306 N.W.2d 12 (1981). When two interpretations of a statute are possible, the intent of the Legislature is disclosed by the language of the statute in relation to the scope, history, context, subject matter and the object intended to be remedied or accomplished. State v.Automatic Merchandisers, 64 Wis.2d 659, 663, 221 N.W.2d 683
(1974).
The phrase "cost of evaluation" of the mining permit application as used in section 144.85(2)(a) is ambiguous because it is unclear whether the DNR costs associated with evaluating nonmining permits, licenses and approvals related to the mining operation are to be included in the application fee. One could take the position that the mining permit fee application applies only to DNR staff work which is solely attributable to the evaluation of the mining permit and that work done on other permits related to the mine and to the ultimate approval or disapproval of the permit to mine are not subject to the fee. An alternative view is that the mine permit is an "umbrella" permit under which all other permitting falls and therefore the costs of evaluating all DNR requirements related to the mining activities are subject to the permit fee.
For the reasons stated below, it is my opinion that all staff work necessary to determine whether a mining permit should be granted, including the evaluation of other environmental requirements, must be included in the mining permit application fee.
The intent of a statute must be derived from the act as a whole. State ex rel. B'nai B'rith F. v. Walworth County,59 Wis.2d 296, 308, 208 N.W.2d 113 (1973). A review of the MMRA, sections 140.82 to 144.94, reveals that the process of obtaining a mining permit was intended to provide for the comprehensive regulation of a metallic mineral mining operation. Section 144.83 gives the DNR broad authority to regulate exploration, prospecting, mining and reclamation.
The Legislature was aware that a mining operation would necessarily require the obtaining of nonmining permits, licenses and approvals from the DNR. It provided that the hearing on a mining *Page 153 
permit application is to be a master hearing and, when possible, is to include all environmentally related activities regulated by the DNR. Section 144.836 provides:
 (1) SCOPE. (a) The hearing on the prospecting or mining permit shall cover the application and any statements prepared under s. 1.11 [environmental impact statements] and, to the fullest extent possible, all other applications for approvals, licenses and permits issued by the department.
The DNR has promulgated rules designed to use the mining permit as the means by which a comprehensive evaluation of the proposed mine operation takes place. Wis. Admin. Code § NR 132.01. The mining plan required to be submitted by the applicant must include plans for complying with all environmental requirements. Wis. Admin. Code § NR 132.07.
Each approval or denial of an application must be accompanied by detailed findings of fact, conclusions of law and an order. Sec. 144.85(5)(a)f.2., Stats. In order to issue a mining permit, the department must find, among other things, that:
 The proposed operation will comply with all applicable air, groundwater, surface water and solid and hazardous waste management laws and rules of the department.
. . . .
 The proposed mine will not endanger public health, safety or welfare.
Sec. 144.85(5)(a)1.b. and d., Stats.
Plainly, the statutes require that DNR include in its evaluation of the mining permit application an evaluation of the applicant's compliance with all related environmental laws. This evaluation necessarily includes all information submitted in the application, all information received at the master hearing and any other information required by the department for its consideration when deciding whether to issue the permit.
The Legislature recognized that the mining application fee would necessarily overlap with costs normally assessed by the DNR when carrying out other regulatory responsibilities. It specifically provided for an offset so there would be no duplicative charges. Section 144.85(2)(a) provides: "[t]he fee may be revised for persons to reflect the payment of fees for the same services to meet other *Page 154 
requirements." This provision manifests the intent of the Legislature to include all of the actual costs of the evaluation even when the evaluation included "services" necessary to insure that other requirements are being met. The only limitation on the fee assessment is that it should be reduced in those circumstances where the services were already paid for under nonmining regulatory fees.
These other regulations provide for a variety of fee structures. For example, when an environmental impact statement is required, the full cost of preparation by the DNR is charged to the applicant. Sec. 23.40(3), Stats. Thus, any charges for work performed in preparing the environmental impact statement cannot be charged as a cost of the mining permit application fee.
Other fees assessed by the DNR are fixed amounts and are not based on actual costs. For example, a major new source of air pollution would be required to pay a basic fee of $2,550. Wis. Admin. Code § NR 410.03(1)(a)3.[1] In this instance any evaluation costs associated with assuring compliance with air pollution control regulations that are in excess of the air permit fees and which have not been charged as part of the cost of preparation of an environmental impact statement are chargeable to the applicant as part of the mining permit application fee.
There are also DNR approvals that may be required in mining operations for which there is no fee. For example, section 144.025(2)(e) and Wis. Admin. Code ch. NR 112 require approval for high capacity wells. There is no fee charged for processing the approval. Thus, when the approval is done as part of the mining permit evaluation, the full cost of work done must be charged as part of the application fee.
The assessment of all of the actual costs associated with approving a metallic mineral mining operation reflects a legislative purpose to have the operator of the mine, rather than the public, bear the costs of approval. Like the preparation of an environmental impact statement, the effort required to decide whether to issue a mining permit may be substantial. In most instances, the evaluation *Page 155 
of nonmining permits that are related to the mining operation is a far more complex and demanding process than is normally the case in nonmining circumstances. The usual permit fees fall far short of covering these costs. In order to cover these expenses, the Legislature provided that the applicant pay all of the actual costs of all work necessary to decide on the application.[2]
Your second question asks whether withdrawal of the mining permit application prior to a final decision by the DNR affects your obligation to assess the mining permit fee. You point out that Wis. Admin. Code § NR 132.06(3)(a) provides that the initial mining fee is $10,000 and that upon completion of the evaluation the fee is to be adjusted to reflect the actual cost of evaluation. The rule states that the completion occurs upon the issuance of an order to grant or deny a mining permit. You note that Exxon Minerals and Coal Company withdrew its application shortly before the master hearing and that therefore the permit application will not be acted upon. In my opinion, the withdrawal of the application necessarily terminates the evaluation process and therefore the fee adjustment must reflect costs up to the time of withdrawal.
While it is correct that Wis. Admin. Code § NR 132.06(3)(a) does not appear to provide for this possibility, the rule should be construed to avoid an unreasonable or absurd result.[3] Wis.Environmental Decade v. Public Service Comm., 84 Wis.2d 504,528, 267 N.W.2d 609 (1978). Rules are subject to the same principles of construction as applied to statutes. Law Enforce.Stds. Bd. v. Lyndon Station, 101 Wis.2d 472, 488, 305 N.W.2d 89
(1981).
The statute upon which the rule is based does not define when completion of the evaluation occurs. Sec. 144.85(2)(a), Stats. The legislative purpose to require reimbursement to the DNR for incurred costs would not be fulfilled if an applicant could make an eleventh hour withdrawal and thereby pass the costs to the public.
DJH:RAS
[1] Section 144.399(3) provides for an offset of air pollution permit fees for costs assessed by the DNR when doing air quality analysis on the same pollution source in conjunction with the preparation of an environmental impact statement. Thus, as in section 144.85, the Legislature sought to avoid duplicative costs while at the same time not allowing an applicant to avoid costs incurred by the DNR merely because the costs were related to one or more regulatory programs.
[2] The Legislature also took other measures to insure that an approved mining operation would not result in costs to the public. Section 144.86 requires a mine operator to post a bond to cover any state reclamation costs in the event the operator fails to comply with the MMRA or permit. This provision is further evidence of legislative intent that the costs of mining related activities should not be paid by the public.
[3] If the lack of a denial of the application were to prevent DNR from recovering costs, the department could simply go through the otherwise meaningless exercise of issuing a denial, on the basis of the withdrawal. *Page 156